GRAND LODGE INDEPENDENT ORDER OF MUTUAL AID

*v.*

CATHARINE WIETING.

408:38 LRA729n
39 LRA 316n

*Opinion filed November 1, 1897.*

1. EVIDENCE—*coroner's verdict admissible in action on insurance certificate.* The verdict rendered by a coroner's jury at an inquest held over the body of a deceased person is admissible in evidence in a suit to recover upon a certificate of insurance held by him.

2. SAME—*hypothetical question may be framed on facts claimed to be proved.* A party desiring the opinion of an expert may, within reasonable limits, put his case hypothetically as he claims it has been proven, and take the opinion of the witness thereon, leaving the jury to determine whether the case put is the one proven.

3. SAME—*jury may be cautioned against taking for granted facts stated in hypothesis.* The court may instruct the jury to determine from the evidence whether the facts assumed in a hypothetical question are proven, and that if the question incorrectly assumes the existence of material facts, so as to impair the value of the opinion based thereon, they may give the opinion little weight.

4. SAME—*competency of non-expert to testify on question of insanity is for the court.* Whether a non-expert witness is competent to express an opinion upon the question of the insanity of an acquaintance is to be determined by the court.

5. SAME—*when non-expert is incompetent upon question of insanity.* A non-expert witness is not competent to give an opinion as to the insanity, at the time of death, of a person with whom he had but a passing acquaintance, and to whom he had not spoken for eight months or a year before such death occurred.

6. SAME—*act of self-destruction may be considered in determining insanity of deceased.* Although the act of self-destruction raises no presumption of insanity, yet such act, and the mode and manner of its accomplishment, may be considered, together with all the facts and circumstances, in determining the question of the insanity of the deceased.

7. INSURANCE—*effect of provision limiting liability in case of suicide.* A provision in an insurance certificate limiting the society's liability, in case of suicide by the assured, to the amount actually paid in, cannot be enforced where the assured was unable to understand the moral character, general nature, consequences and effect of his suicidal act, or where he was driven thereto by an uncontrollable insane impulse.

*Ind. Order of Mutual Aid* v. *Wieting,* 68 Ill. App. 125, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

This was an action of assumpsit, instituted in the circuit court of Peoria county by the appellee, against the appellant lodge, to recover on a beneficiary certificate issued by the appellant lodge, insuring the life of William Wieting for the benefit of the appellee, his wife. Plaintiff prevailed in the trial court, and the judgment in the sum of $2072 there rendered was affirmed by the Appellate Court for the Second District. This is an appeal perfected by the lodge to this court.

The application for the certificate contained the following statement, viz.: "I hereby most solemnly promise that I have made or will make to the medical examiner of your lodge full and complete statements of the nature and duration of all ailments that now impair or have at any time impaired my life or health. I also hereby agree that should I commit suicide, then and in that case only the amount paid by me into the mutual aid fund on my certificate shall be paid to the beneficiaries mentioned in my beneficiary certificate.   *   *   *   I further agree and contract that the answers I shall make to the questions propounded by the medical examiner, as shown by the medical examiner's blank hereto attached, shall be the truth, and I agree that they shall form the basis of my contract with the said Grand Lodge of Illinois Independent Order of Mutual Aid."

The certificate contained the following provision, viz.: "*Provided, however*, that should the said William Wieting commit suicide, then and in that case only the amount paid by the said William Wieting into the beneficiary fund by virtue hereof shall be paid to the beneficiaries above mentioned, which said amount shall be in full of all demands whatsoever arising out of or under this ben-

eficiary certificate. This certificate is issued expressly in consideration that all the representations made by said William Wieting in his application and accompanying statements now on file in the office of the grand secretary are true, and that all lawful assessments shall be promptly paid, and that the said William Wieting shall in every particular comply with and abide by all laws, rules and regulations of the order which now exist or which may hereafter be adopted by the grand lodge of the State of Illinois."

It appeared from the testimony the assured came to his death by suicide. On behalf of the appellee evidence was produced as to the sanity of the assured at the time of his death, and the principal issue submitted to the jury was whether his act of taking his life would bar recovery under the certificate.

JOHN P. AHRENS, for appellant:

Where the policy provides that it shall be void if the insured die by suicide, it is avoided by his self-destruction, even though he was at the time impelled by an insane impulse which he was unable to resist, and was unable to judge between right and wrong. Niblack on Benefit Societies, 304, note 1.

Voluntary and intentional self-destruction by the insured is within the proviso of an insurance policy against suicide, notwithstanding he was at the time incapable of appreciating the moral quality of the act. His capacity to appreciate its moral nature is not a material question, except as bearing upon the inquiry whether he had sufficient mental capacity to understand its physical consequences and was in possession of his power of will. *Clift* v. *Schwabe,* 3 C. B. 437; *Borradaile* v. *Hunter,* 5 M. & G. 639.

It is not every degree of insanity which will so far excuse the party taking his own life as to make the party insuring liable, but the mind of the deceased must have been so far deranged as to have made him incapable of

using a rational judgment in regard to the act he was committing, or he must have been impelled by some insane impulse which the reason that was left him did not enable him to resist.   *Terry* v. *Insurance Co.* 15 Wall. 580.

JACK & TICHENOR, for appellee:

While an expert may not be interrogated upon a hypothesis having no foundation in evidence, it is yet not necessary that the hypothetical case put to him should be an exact reproduction of the evidence or an accurate presentation of what has been proved.   1 Am. & Eng. Ency. of Law, 514.

A suicide clause in a policy has reference to the criminal act of self-destruction.   The self-destruction of the insured while insane and incapable of discerning between right and wrong is not within the provision.   *Breasted* v. *Farmers' Trust Co.* 4 Hill, 73.

If the assured, being in the possession of his ordinary reasoning faculties, from anger, pride, jealousy or a desire to escape from the ills of life intentionally takes his own life, the proviso attaches and there can be no recovery. If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, general nature, consequences and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable.   *Gay* v. *Insurance Co.* 2 Bigelow's Ins. Cas. 4.

The onus of showing the requisite capacity of the insured, as well as the act of self-destruction, to bring the case within the proviso, rests upon the company,—the party who sets it up as a defense.   *Insurance Co.* v. *Peters*, 42 Md. 414; *Insurance Co.* v. *Gridley*, 100 U. S. 614; *Phillips* v. *Insurance Co.* 26 La. Ann. 404.

Mr. JUSTICE BOGGS delivered the opinion of the court:

It is assigned for error the circuit court refused to permit certain veniremen to answer questions of the appellant lodge touching their competency to sit as jurors in the case. None of the persons to whom such questions were propounded were accepted on the jury. The appellant did not exhaust its peremptory challenges, and it does not appear it sought to propound the questions to any venireman who afterward served on the jury. An unobjectionable jury was obtained, and it is therefore immaterial to determine whether the court ruled correctly as to the propriety of the questions referred to.

It is urged the court erred in permitting the appellee to introduce the verdict rendered by the jury at the inquest held by the coroner over the body of the deceased assured, and in permitting certain hypothetical questions, hereinafter set forth, propounded by the appellee to certain witnesses, to be answered by such witnesses, and in refusing to allow Frantz Taylor, a witness introduced by the appellant lodge, to express an opinion as to the sanity of the assured.

The current of authority is, *post mortem* inquisitions made under the authority of the coroner are admissible in evidence. 1 Greenleaf on Evidence, sec. 556; Starkie on Evidence, sec. 404; *United States Life Ins. Co.* v. *Vocke,* 129 Ill. 557.

The first ground of objection to the hypothetical question is, that it was so framed as to apply to the deceased by name, instead of a supposititious person, the remaining objection to the hypothetical question being, that the supposed facts, or many of them, stated in the question, were beyond the range of the evidence. The hypothetical question could not but have been understood by the jury to have reference to the deceased assured, and we are unable to see the appellant lodge was, or could have been in any way, prejudicially affected by the insertion of his name in the question. We think the propositions

of supposititious facts set out in the question were fully in accordance with the intendments and effect of the evidence. The rule is, "the party seeking the opinion of an expert may, within reasonable limits, put his case hypothetically as he claims it to have been proven and take the opinion of the witness thereon, leaving the jury to determine whether the case as put is the one proven." (1 Am. & Eng. Ency. of Law, 514.) If it was feared the question contained statements of alleged facts which were not proven, and that the jury might be led to accept them simply because they were incorporated in the hypothesis, it was competent for the appellant lodge to caution the jury by an instruction, directing them they were not to take for granted statements in the question, but should carefully scrutinize the evidence and determine which, if any, of the averments were true, and if the question incorrectly assumed the existence of material facts to such an extent as to impair the value of an opinion based on the question, they might regard the opinion of little or no weight. *Forsyth* v. *Doolittle,* 110 U. S. 73; *Guetig* v. *State,* 66 Ind. 94; *Goodwin* v. *State,* 96 id. 550.

We do not think error demanding a reversal occurred in the refusal of the court to permit the witness Taylor to express an opinion on the question of the sanity of the deceased. The court recognized the rule that any witness who had been familiar with the deceased was competent to express an opinion as to his sanity, and a number of such witnesses produced on behalf of the parties, respectively, did give in evidence their conclusions on that question. The court refused to allow Taylor to express an opinion on the ground it did not appear he was sufficiently familiar with and had not had sufficient opportunity to judge of the mental condition of the alleged insane person. While a non-expert witness may be heard upon the question of insanity, yet his competency to express an opinion must first appear, and whether he is competent is a question for the court. It appeared

the witness had but a passing acquaintance with the deceased and had not spoken to him probably within a year,—certainly not within eight months,—prior to his death. The court correctly ruled the witness had not sufficient knowledge of the acts and conduct of the deceased to qualify him to testify on the point.

The appellant lodge, by special plea, interposed as a defense that the assured fraudulently and untruthfully stated in his application for insurance that he had never had any of the following diseases, viz., "habitual headache, sun-stroke," etc., and that such representations were false and known by the applicant to be false, and were material to the risk. It is urged this special plea was supported by evidence which was not controverted, and the judgment should be reversed on that ground. The appellant lodge produced no witnesses or other testimony in its own behalf in support of its plea. Upon cross-examination of the appellee, testimony was produced which tended to show the deceased had suffered a sun-stroke prior to making the application, and that he at times suffered from headache. Other testimony produced by appellee tended to contradict that thus elicited on cross-examination. The burden of supporting the plea by a preponderance of the evidence was upon the appellant lodge. The court, at its request, instructed the jury, if they believed the representations in question were untrue and that the certificate was issued upon the faith of the answers, and the lodge was not informed as to the untruthfulness of the answers until after the death of the said William Wieting, the plaintiff was not entitled to recover, and their verdict should be for the defendant. The jury, by its verdict, found the plea was not supported by a preponderance of the evidence, and the Appellate Court has affirmed that finding. It is not our province to determine as to the preponderance of the evidence, but we must accept the judgment of the Appellate Court as final upon that question.

Complaint is made the court refused to give, as asked by appellant, the following instruction:

"The court instructs the jury that if they believe, from the evidence, that said William Wieting took his own life, that fact alone does not raise a presumption, and is not of itself evidence, that he was insane at the time of committing said act."

But the court refused to give the instruction in that form, but modified it by adding thereto the following: "But the jury may weigh such act and the circumstances attending it, so far as disclosed by the evidence, in connection with all the evidence in the case bearing on that question, in determining his mental condition at the time of the act of self-destruction."

There is no presumption of law that self-destruction arises from insanity. The law presumes normal conditions to exist—hence that all men are sane. Insanity being an abnormal condition, must be proven as a question of fact. The acts and conduct, and delusions, if any, of the person whose mental condition is the subject of inquiry, including the act of self-destruction and the attending circumstances, are proper for consideration in determining the fact. The law does not declare that one who takes his own life is to be deemed, as a matter of law, to be insane, nor that the act of suicide shall not be considered in determining whether such person was in fact possessed of a sound mind. Whether insane or not is a question of fact, in determining which it is competent to consider the acts and conduct of the party in question, and no reason is perceived why the act of self-destruction, the manner and mode thereof, and all attending circumstances, should be excluded from consideration. This view finds support in *Karow* v. *Continental Life Ins. Co.* 57 Wis. 56, and *Terry* v. *Insurance Co.* 3 Dill. 408. The instruction as modified properly left the question of insanity to be determined from the evidence as one of fact.

The case of *Crum* v. *Thornley*, 47 Ill. 192, announces no doctrine at variance with what we have stated. That case declares it has not been judicially decided that an attempt to commit suicide is *per se* evidence of insanity, —that is, insanity is not conclusively established by such proof. One who commits suicide may or may not be insane, but the fact of self-destruction is proper for consideration in arriving at a conclusion as to the soundness of mind of such person.

It is further complained the court refused to give the following instruction:

"The court instructs the jury that in and by the beneficiary certificate offered in evidence it is provided that should the said William Wieting commit suicide, then and in that case only the amount paid by the said William Wieting into the beneficiary fund of the defendant by virtue of said beneficiary certificate shall be paid to the beneficiaries therein mentioned, which said amount shall be in full of all demands whatsoever arising out of or under said beneficiary certificate; and if the jury believe, from the evidence, that the said William Wieting came to his death by hanging himself, and that he did not hang himself by accident, then the court instructs the jury, as a matter of law, that the defendant is not liable on the beneficiary certificate sued on, except to the extent of the amount paid by said William Wieting into the beneficiary fund of the defendant by virtue of said beneficiary certificate; and if the jury believe, from the evidence, that said hanging was not accidental, as aforesaid, then it is immaterial in this case whether said William Wieting at that time was sane or insane, or whether or not he was then able to understand the moral character and general nature, consequences and effect of the said act he was about to commit, or whether or not he was then impelled thereto by an insane impulse which he had not the power to resist."

After the refusal of the foregoing the appellant asked and the court gave the following instructions, viz.:

"The court instructs the jury that they are the sole judges of the facts in this case, and although the jury may believe, from the evidence, that said William Wieting at times acted strangely and in such a manner as to cause some people to believe him to be insane, yet if they believe, from all the evidence in the case, that said William Wieting, when he committed the act of hanging himself by his own hand, was not so insane but that he knew what he was doing, that he knew death would result from the act and that he committed the act intentionally to put an end to his life, and that at the time his mental faculties were not so impaired but that he was able to understand the moral character and general nature, consequence and effect of the act he was about to commit, and that he was not impelled thereto by such an insane impulse as he had not the power to resist, then the court instructs the jury, as a matter of law, that the defendant is not liable upon the beneficiary certificate sued on in this case, except to the extent of the amount paid by the said William Wieting into the beneficiary fund of the defendant, which it is admitted by the parties is $26.25."

"If the jury believe, from the evidence, that said William Wieting came to his death by hanging himself, and although the jury may further believe, from the evidence, that said William Wieting was then insane and that he acted under the influence and impulse of insanity, and that his act of self-destruction was the direct result of insanity, yet if the jury further believe, from the evidence, that said William Wieting was not then in a state of madness or delirium, and that such act of self-destruction was the result of the will and intention of said William Wieting, he adapting the means to the end and contemplating the physical nature and effects of the act, then the court instructs the jury, as a matter of law, that the defendant is not liable on the beneficiary certificate sued

168—27

on, except to the extent of the amount paid by the said William Wieting into the beneficiary fund of the defendant by virtue of said beneficiary certificate."

At the request of the appellee the court gave the following instruction upon the same point, to-wit:

"The court instructs the jury that suicide, or self-destruction, as these terms are to be understood in the law, implies that the act was deliberately done by a person capable, in law, of forming a legal intention to do the act; and if you find, from the evidence in this case, that the said William Wieting was insane at the time he took his life, and even though he intended that the result of his act should be death, yet if his reasoning faculties were so far impaired that he was not able to understand the moral character, the general nature, consequence and effect of the act he was about to commit, or if he was impelled thereto by an insane impulse which he had not the power to resist, then his act was not suicide in the legal sense of those terms, and you should find the issues in favor of the plaintiff, so far as that issue is concerned."

The ruling of the court upon these instructions presents a question which, so far as we are aware, has never been the subject of judicial interpretation in this court.

The clause in the certificate here involved is as follows: "*Provided, however*, that should the said William Wieting commit suicide, then and in that case only the amount paid by the said William Wieting into the beneficiary fund by virtue hereof shall be paid to the beneficiaries above mentioned, which said amount shall be in full of all demands whatsoever arising out of or under this beneficiary certificate."

It has been uniformly held, so far as we are advised, that if the policy contains no provision on the subject, the death of the assured by his own act resulting from insanity is as much insured against as death resulting from any other physical affliction. Suicide, at common law, ranked as a crime, and was punished by forfeiture

of goods and an ignominious burial, (4 Blackstone's Com. 189, 190,) and many authorities, in view of this fact, have construed clauses in policies exempting the insurer from liability if the assured should "commit suicide," as effective only when the circumstances of the self-killing and the mental condition of the assured were such it would have been deemed at the common law he had committed the crime of self-murder.   Perhaps such rulings induced insurers to adopt other phrases, such as "die by his own hand," "take his own life," "die by his own act," etc.   In America, however, self-destruction is not a crime, and the meaning given to the word "suicide" in criminal law seems to have been abandoned in the construction of insurance policies, and the phrase "commit suicide" has been declared synonymous with the other phrases employed to convey the idea of voluntary, intentional self-destruction. *Insurance Co.* v. *Terry*, 15 Wall. 580; *Schultz* v. *Insurance Co.* 40 Ohio St. 217; *Breasted* v. *Farmers' Loan and Trust Co.* 4 Hill, 74; *Insurance Co.* v. *Graves*, 6 Bush, 268; *McEntire* v. *Insurance Co.* 102 Mass. 230; *Phadenhauer* v. *Insurance Co.* 7 Heisk. 567;  2 Biddle on Insurance, 831, 832.

It is believed there is a substantial concurrence of judicial decision in America on the proposition that if, at the time of the suicidal act, the assured was so affected with insanity as to be unconscious of the act or of the physical effect thereof, or was driven to its commission by an insane impulse which he had not the power to resist, the act of self-destruction is regarded as though it were the result of accident or some irresistible external force, and the proviso of a policy framed as the one at bar, or where other phrases denoting self-destruction are used, will not attach, but the insurer will be held liable.

There is much conflict of opinion and authority as to the effect of the condition or proviso of the policy when insanity had so far overcome the consciousness of the assured as that he is unable to appreciate the moral wrong involved in the act of taking his own life, though he had

mind enough to intend the act and was aware of its physical effect. The Supreme Court of the United States is committed to the doctrine that in order to relieve the insurer from liability because of a proviso of the character here involved, there must have been sufficient mental understanding to realize the moral turpitude of the act of self-destruction. *Life Ins. Co.* v. *Terry,* 15 Wall. 580; *Bigelow* v. *Berkshire Life Ins. Co.* 93 U. S. 284; *Manhattan Life Ins. Co.* v. *Broughton,* 109 id. 121.

In *Life Ins. Co.* v. *Terry, supra,* after a full review of previous decisions, the court remarked: "We hold the rule on the question before us to be this: If the assured, being in the possession of his ordinary reasoning faculties, from anger, pride, jealousy or a desire to escape from the ills of life intentionally takes his own life, the proviso attaches and there can be no recovery. If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable."

This view has met the approval of the court of last resort in the State of New York, (*Vanzandt* v. *Mutual Benefit Life Ins. Co.* 55 N. Y. 169, *Newton* v. *Same,* 76 id. 426,) Pennsylvania, (*Com. Life Ins. Co.* v. *Groone,* 86 Pa. St. 92, *Am. Life Ins. Co.* v. *Isett,* 74 id. 176,) Maryland, (*Knickerbocker Life Ins. Co.* v. *Peters,* 42 Md. 414, *Bank of Oil City* v. *Guardian Mutual Life Ins. Co.* 5 Big. Ins. Cas. 478,) Tennessee, (*Phadenhauer* v. *Germania Life Ins. Co.* 7 Heisk. 567,) Georgia, (*Merritt* v. *Cotton States Life Ins. Co.* 55 Ga. 103, *Life Ass. of America* v. *Wallar,* 57 id. 533,) Michigan, (*John Hancock Mutual Life Ins. Co.* v. *Moore,* 34 Mich. 41,) Vermont, (*Hathaway* v. *National Life Ins. Co.* 48 Vt. 335,) and Ohio,

(*Schultz* v. *Insurance Co.* 40 Ohio St. 217.)   And upon principle, as well as what seems to be the prevailing judicial sentiment in the United States, we accept and adopt it.

It will be observed the rulings of the court on granting and refusing the instructions under consideration are in harmony with the doctrine we regard as correct.   The evidence tended to show the moral perceptions of the assured were overpowered by his insanity, and we have no jurisdiction to scrutinize it further.

Exceptions taken to the ruling of the court upon other instructions raised the same questions of law and are disposed of by what has already been said.

No error appearing in the record the judgment of the Appellate Court is affirmed.          *Judgment affirmed.*