## Supreme Lodge, Knights of Pythias, v. Jennie Dee Clarke.

1. BENEFICIARY INSURANCE—*Stipulations as to Death by Suicide.*— It is competent for a beneficiary insurance association to stipulate against intentional self-destruction, whether it be the voluntary act of an accountable moral agent or not, and a condition in the certificate or policy, and the by-laws, which, when taken together, form the contract between the parties, that if the death of the insured results from suicide, either voluntary or involuntary, whether sane or insane at the time, the amount to be paid to the beneficiary will be the value of the certificate or policy at the time of the death of such member to be computed in the manner set forth in the certificate or policy, is lawful.

2. SAME—*Conditions as to Death by Suicide.*—A contract of insurance which provides that if the insured shall meet death in the due course of nature one sum shall be paid to the beneficiary, but if he takes his own life another and less sum is to be paid, and in no event is there to be a forfeiture of the policy, but that the beneficiary shall not profit by the act of the insured in taking his own life, or the association of which he is a member be wronged thereby, is to be regarded with favor by the courts as just and equitable to all parties concerned.

3. SUICIDE—*Beneficiary Insurance—Insanity.*—When insanity has so far overcome the consciousness of a person insured in a beneficiary insurance association that he is unable to appreciate the moral wrong involved in the act of taking his own life, though he has mind enough to intend the act, and is aware of its physical effect upon him, such an act is not sufficient to avoid the policy.

**Assumpsit,** on the certificate of a beneficiary insurance association. Appeal from the Circuit Court of White County; the Hon. PRINCE A.

Supreme Lodge, Knights of Pythias, v. Clarke.

PEARCE, Judge, presiding. Heard in this court at the February term, 1899. Reversed and remanded. Opinion filed March 16, 1900.

**Statement.**—This is an action of assumpsit, brought by appellee against appellant, on a certificate of membership dated January 17, 1891, issued to Frank E. Clarke, whereby he became a member in good standing of the Endowment Rank of the Supreme Lodge of the Knights of Pythias of the World, a beneficiary insurance society, having a branch lodge at Grayville, in this State.

Clarke's application for, and which became a part of the certificate, contained an agreement on his part as follows:

" I hereby agree that I will punctually pay all dues and assessments for which I may become liable, and that I will be governed, and this contract shall be controlled by all the laws, rules and regulations of the order governing this rank, now in force, or that may hereafter be enacted, or submit to the penalties therein contained."

The certificate contained the following agreement:

"And in consideration of the payments hereafter, to said Endowment Rank, of all assessments as required, and the full compliance with all the laws governing this rank now in full force, or that may hereafter be enacted by the Supreme Lodge, Knights of Pythias of the World, or the Board of Control of the Endowment Rank, and shall be in good standing under the said laws, the sum of $2,000 will be paid by the Board of Control of the Endowment Rank, Knights of Pythias of the World, to Jennie Dee Clarke, his wife, as directed by said brother in his application, or to such other person or persons as he may subsequently direct, by change of beneficiary entered upon the records of the Supreme Secretary of the Endowment Rank, upon due notice and proof of death, and good standing in the Rank at the time of death, and surrender of this certificate."

After the certificate was issued and before the death of said Frank E. Clarke, appellant duly adopted a by-law as follows:

" If the death of any member of the Endowment Rank heretofore admitted into the first, second, third or fourth classes, or hereafter admitted, shall result from suicide, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be

caused or superinduced by the use of intoxicating liquors, narcotics or opiates, or in consequence of a duel, or at the hands of justice, or in violation or attempted violation of any criminal law, that the amount to be paid upon such member's certificate, shall be a sum only in proportion to the whole amount, as the matured life expectancy is to the entire expectancy, at date of admission to the Endowment Rank, the expectation of life based upon the American Experience Table of Mortality, in force at the time of such death, to govern."

The assured paid all of the assessments made against him, and complied with all the laws governing the rank of the order of which he was a member, and died December 27, 1896, from the effects of morphine administered by himself.

The defendant pleaded the general issue, and also a special plea, setting up the by-law of the order, and further alleging as follows:

"That the said Frank E. Clarke came to his death by self-destruction, and that by reason thereof, and by virtue of said law last above set forth, the plaintiff, as beneficiary under said certificate of insurance, is entitled to receive of the defendant only the sum of four hundred and seventeen and sixty-four one-hundredths dollars ($417.64), which said sum of $417.64 the defendant, since the death of said Frank E. Clarke, has at all times been ready and willing to pay to the plaintiff, and upon the death of said Frank E. Clarke, the defendant thereupon then and there tendered and offered to pay to the plaintiff said sum of four hundred and seventeen and sixty-four one-hundredths dollars, and is still ready and willing to pay to the plaintiff said sum of money, and this the defendant is ready to verify."

To this plea plaintiff filed four replications. The first denied that said Clarke came to his death by suicide. A demurrer was sustained to the second and third replications, and the fourth replication is as follows:

"That at the time of the alleged suicide of said Frank E. Clarke, he, the said Frank E. Clarke, was wholly insane, not conscious of the manner of his death, and wholly incapable, by reason of his said insanity, of forming the intention of taking his life; that he did not intend to take his life, and that the death of said Frank E. Clarke was not the result of any intentional act of him, said Frank E. Clarke."

To this replication defendant rejoined :

"That said Frank E. Clarke, at the time of his alleged suicide was not wholly insane, unconscious of the manner of his death and wholly incapable, by reason of his insanity, of forming the intention of taking his life as alleged in said replication; but it avers, that when said Frank E. Clarke committed suicide as alleged in the second plea of the defendant, he did so with the intention of taking his own life, and that the death of the said Frank E. Clarke was the result of his own intentional act."

Issue was taken on defendant's plea of general issue, also on plaintiff's first replication to defendant's special plea, and on defendant's rejoinder to plaintiff's fourth replication; and the parties stipulated as to all matters of fact, except the question of insanity, as will be seen by the closing summary of the stipulation, which is as follows :

"The purpose of this stipulation is to leave as the only issue of fact in dispute, to be tried in said cause, the manner of the death of said Frank E. Clarke; and all other questions of fact necessary for plaintiff to make out her case, or for the defendant to make out its defense, are hereby mutually admitted, it being the mutual purpose of this stipulation to have said cause tried upon the one question or issue : Did the manner of the death of said deceased defeat a recovery for the full amount of the policy ? If, under the law and evidence, the manner of the death of said Frank E. Clarke precludes a recovery, then the plaintiff shall be entitled to recover only $417.64 and costs; and if, under the law and the evidence, the manner of the death of said Frank E. Clarke does not defeat a recovery, then the plaintiff shall recover the full amount of said certificate or policy of insurance, and costs."

The jury returned a verdict for the plaintiff for the full amount of the certificate, on which the court rendered judgment and the defendant brings this appeal.

WILLIAM S. FORREST and BENSON LANDON, attorneys for appellant.

T. G. PARKER and C. S. CONGER, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court. Three points are made by counsel for appellant, on the

errors assigned: First, that the court erred in admitting improper evidence to go to the jury on the part of plaintiff, which was objected to by the defendant; second, that the court erred in giving plaintiff's second instruction to the jury, and third, that the verdict was contrary to the evidence.

It will be seen from the stipulation of the parties that the entire controversy was made to turn upon the mental condition of Frank E. Clarke at the time of his death, and upon the law applicable to the manner of his death.

The uncontradicted evidence is, that he was about thirty-six years of age; was the husband of appellee, and had resided in and was well known to the people of the town of Grayville, nearly all of his life. For years prior to his death, he had been a copartner with his father in the printing business, and together they published a newspaper, in the town where they resided.

He was of good character and habits, addicted to no excesses, and was the secretary and handled the funds of the Grayville Building and Loan Association. For some months preceding his death he was absent from home a considerable portion of his time, frequently going to Chicago, St. Louis, Evansville and other places, was actively engaged in the political campaign of 1896, and neglected the business of his firm, as well as that of the association of which he was secretary. He was called upon several times for a report, as secretary of the building and loan association, but excused himself, promising to attend to it as soon as the official examiner should come and help him on his books.

On the morning of December 26, 1896, he left his home about his usual time and went to his printing office, getting his mail at the postoffice, which was near his place of business. On arriving at his office, a Mr. Dose, an examiner of building and loan associations, was introduced to him by his father, and Dose said to him, "Well, I have got you now," when Clarke replied, "Well, you will have to excuse me for about fifteen minutes," and went out, returning in a short time, and informing Mr. Dose he would be ready to go over the books with him after about fifteen minutes, as he had some business outside.

Clarke then left the office and was not seen again until about ten o'clock at night, when he was found in the loft of his barn, behind a roll of hay, unconscious from the effects of morphine, and beyond medical aid, and so remained until early the following morning, when he died.

An examination of his books after his death disclosed the fact that he was behind in his accounts with the building and loan association, between two and three thousand dollars.

Plaintiff's second instruction is as follows:

"The court instructs the jury: If you believe from the weight of the evidence that Frank E. Clarke took his own life, and that he at the time was so insane as to be incapable of forming an intention to take his life and did not comprehend and understand the physical nature and results of his acts, then the fact of his taking his own life under such circumstances, would not defeat a recovery for the full amount of the policy, $2,000."

The Supreme Court, in Grand Lodge I. O. M. A. v. Weiting, 168 Ill. 408, in passing upon the question whether, if the assured commits suicide when insane, the policy will necessarily be void if it contains a condition to that effect, said:

"There is much conflict of opinion and authority as to the effect of the condition or proviso of the policy, when insanity has so far overcome the consciousness of the assured as that he is unable to appreciate the moral wrong involved in the act of taking his own life, though he had mind enough to intend the act and was aware of its physical effect."

It quotes the rule laid down by the Supreme Court of the United States in Life Ins. Co. v. Terry, 15 Wall. 580, which has been followed by many of the State courts, and adopts the rule as the law of this State. In that case the condition of the policy was, that it should become void if the assured should "die by his own hand," which simply means voluntary suicide. In this case, only the unearned portion of the $2,000 named in the certificate was to become payable, "if the death * * * shall result from suicide, either voluntary or involuntary, whether such member shall be sane or insane at the time."

It is obvious, aside from the words "voluntary or invol-

untary," that there is a difference between the condition of payment in the policy in the Terry case and the condition in the certificate and by-law in this case, arising from the words " sane or insane," contained in the by-law in this case, but which are lacking in the Terry case.

The Supreme Court of the United States, in Bigelow v. Berkshire Life Ins. Co., 93 U. S. 284, after stating that insurance companies could, by stipulation, avoid various classes of risks, said:

" Surely it is competent for them to stipulate against intentional self-destruction, whether it be the voluntary act of an accountable moral agent or not. It is not perceived why they can not limit their liability, if the assured is, in proper language, told of the extent of the limitation, and it is not against public policy."

It is admitted that the assured was told in his certificate and the by-law adopted by appellant, which, taken together, formed the contract between the parties, that if his death should "result from suicide, either voluntary or involuntary, whether * * * sane or insane at the time," the amount to be paid to the beneficiary would be the value of the certificate at his death, to be computed in the manner set forth in the stipulation.

By this agreement the amount to be paid was conditioned on the manner of death of the assured.

If he should meet death in due course of nature, one sum was to be paid to the beneficiary, but if he should take his own life, another and a less sum was to be paid. In no event was there to be a forfeiture of the so-called policy, but the plain agreement was, that the beneficiary was not to profit by an act of the assured in taking his own life, and the order of which he was a member was not to be wronged because of the act. It seems to us that such a contract should be regarded with favor by courts, as it is not easy to conceive of one more just and equitable to all parties concerned.

But if the contract is to be regarded the same as a policy of a life insurance company, containing a clause providing that if the assured should commit suicide, whether sane or

insane at the time, the policy should become void; and if it is held that the words " sane or insane " do not embrace all species of insanity, as is contended in the instruction given by the court, there still remain the words " voluntary or involuntary," applied to the word " suicide."

It must be conceded that the adjective " voluntary " in nowise qualifies the noun " suicide," when the latter is used in its strictly legal sense, since in that sense all suicide is voluntary, and in such a sense there can be no involuntary suicide. But the word " involuntary " was used in its popular sense, and it should be so construed as to give it the meaning intended by the parties using it, and when so construed it means self-destruction without volition, and embraces, as we think, every act of self-destruction not voluntary or intentional.

No authority has been cited and we are unable to find any, holding an agreement against public policy which provided that if death resulted from suicide, whether sane or insane, the policy should become void, and we can not so hold.

The court erred in giving the instruction to the jury.

It is unnecessary to notice the remaining errors assigned, further than to say there is no evidence in the record on which the verdict can be based.

No tender of the amount admitted to be due was brought into court.

Because of the errors indicated, the judgment is reversed, and the cause remanded to the Circuit Court with directions to render judgment for the plaintiff for the sum of $417.64, with interest at five per cent per annum from the date of the verdict and costs.

**Finding of facts** to be copied into the judgment:

We find that Frank E. Clarke complied with the terms of the certificate of insurance as to the payment of assessments thereon, and came to his death by self-destruction on December 27, 1896, and that the amount due and owing appellee by appellant was at the time of the trial in the Circuit Court, the sum of $417.64.

Reversed and remanded.