| 105 | 159 |
| 106 | 455 |
| 204s | 65 |

## The Northwestern Mutual Ins. Co. v. Ora C. Churchill.

1. INSURANCE—*Death by Suicide, Sane or Insane.*—A provision in a contract of insurance that in case the insured shall commit suicide, whether sane or insane, the policy shall be null and void, is not against public policy, but is valid, and is a sufficient defense to an action on the policy, where the insured has committed suicide, sane or insane.

**Assumpsit,** on a policy of life insurance. Appeal from the City Court of Canton; the Hon. P. W. GALLAGHER, Judge presiding. Heard in this court at the May term, 1902. Reversed and remanded. Opinion filed November 1, 1902.

BROWN, WHEELER, BROWN & HAY, attorneys for appellant.

FRED H. SNYDER and GRANT & GRANT, attorneys for appellee.

MR. PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

This suit was brought on a policy of insurance, made by the appellant on the life of Franklin S. Churchill, for the sum of $1,000. The policy was issued, as appears from the declaration as expressed therein, " in consideration of the statements and agreements made in the application for this policy, which is hereby made a part of this contract, and in further consideration of the payment," etc. The application, as appears also from the declaration, contains the following :

" It is also agreed that if within two years from the date hereof I shall pass south of the Tropic of Cancer, without a written permit therefor signed by the president or secretary of the company, or shall, within the said two years, either undertake an aerial voyage or die in consequence of a duel, or, whether sane or insane, die by my own hand, then, and in every such case, any policy issued on this application shall be null and void."

To the declaration the defendant filed four special pleas, numbered respectively 2, 3, 4 and 5. These, in substance, aver that the policy in each case was issued in consideration of the statements and agreements made in application for the policy, which application was made a part of the contract; that said application was made and dated August 22, 1900, and by the application the assured did declare and agree, that if he should, within two years from the date of said application, whether sane or insane, die by his own hand, then and in that case any policy issued on said application should be null and void; that the said assured did, within two years next after the date of said application, to wit, on the 8th of September, 1901, die by his own hand. By one of the pleas it is averred that the death was not the result of accident and by another that he died by his own hand, sane or insane. To these pleas the plaintiff filed two replications. By the first it is averred that at the time in

the second, third, fourth and fifth pleas mentioned, the said Franklin S. Churchill was so affected with insanity as to be unconscious of the said act alleged in the second, third, fourth and fifth pleas, to wit, the alleged taking of his own life, or the physical effect of such act; by the second replication it is averred that at said time in said second, third, fourth and fifth pleas alleged, to wit, on September 8, 1901, the said Franklin S. Churchill was driven to the commission of said act of self-destruction as in and by said second, third, fourth and fifth pleas alleged, by an insane impulse which he, the said Franklin S. Churchill, had not the power to resist. To these replications, and each of them, the defendant interposed a demurrer, which was by the court overruled, and the defendant stood by its demurrer. The principal errors assigned, draw in question this action of the court.

We held in Supreme Court of Honor v. Schwartz, 96 Ill. App. 587, as a question of fact, that the assured had died by his own hand, and reversed the judgment for that reason. In the argument in that case, however, it was assumed, without discussion, that under the conditions of the contract, if the assured committed suicide, whether sane or insane, there could be no recovery; and the point raised in the present case was not made, and was not, therefore, decided, nor discussed by the court. In the opinion of the Supreme Court by which the judgment was affirmed, 194 Ill. 344, it was said : "It is not claimed the plaintiff could recover if Weinberger died by his own hand, nor that the fact found (suicide) would not absolutely preclude a recovery as a matter of law." So far as we know our Supreme Court has not decided this question; at any rate no authority of that kind has been cited to us, and we are unable to find any. In Grand Lodge I. O. M. A. v. Weiting, 168 Ill. 408, there was a clause in the contract of insurance to the effect that, if the assured should commit suicide, then only the amount paid by him into the beneficiary fund should be paid at his death; and the court held in that case that if at the time of the suicidal act the

assured was so affected with insanity as to be unconscious of the act, or of the physical effect thereof, or was driven to its commission by an insane impulse which he had not the power to resist, the act of self-destruction is regarded as though it were the result of accident, or some irresistible external force, and the proviso of a policy including suicide or self-destruction will not attach, but the insurer will be held liable. ·The case at bar, however, presents a different question than the one in the case just cited, although it is contended by counsel for appellee, that if the degree of insanity was such as is equal to that described by the court in the case we have alluded to, its principle will apply to every case of suicide, even where the clause is further limited by the phrase, " whether sane or insane," and the contract in the case presented is so limited.

In the case of Supreme Tent, etc., v. Hammers, 81 Ill. App. 560, in the Appellate Court of the Second District, it was held that a contract like the one here in question was not against public policy, and that it was valid, and that it was a sufficient defense if the assured had committed suicide, sane or insane, and to the same effect is the decision of the like court in the Fourth District, in Supreme Lodge, etc., v. ˙ Clarke, 88 Ill. App. 600. The latter case was, however, reversed in 189 Ill. 639, not upon its merits, but because the court had not entered a proper judgment. In the case of Bigelow v. Berkshire Life Ins. Co., 93 U. S. 284, the contract of. insurance contained a condition of avoidance if the insured should die by suicide, sane or insane; the company agreed to pay the surrender value only, of the policy, at the time of his death; the defendant pleaded that the insured died by suicide, to which the plaintiff replied that Bigelow, at the time he inflicted the pistol wound upon his person by his own hand, was of unsound mind, and wholly unconscious of the act. The defendant demurred to this replication, which was sustained by the trial court, and the plaintiff took the case to the Supreme Court for review. It was there said, citing Life Ins. Co. v. Terry, 15 Wall. 580, that the question in that court

was settled, that the words "avoiding a policy," "shall die by his own hand," "shall commit suicide," referred to an act of criminal self-destruction, and did not apply to an insane person who took his own life. But in the case there presented, the insurers had gone further, and sought to avoid altogether this class of risks; and if they had succeeded in this, it was the duty of the court to give effect to the contract, as neither the policy of the law nor sound morals forbid them to make it. Felonious suicide was not alone in the contemplation of the parties, for if it had been, there was no necessity of adding anything to the general words. These had been construed by many courts of high authority to exclude self-destruction by an insane man. As the time between sanity and insanity is often shadowy, and difficult to define, that company thought proper to take the subject from the domain of controversy, and by stipulation, exclude all liability by reason of the death of the party by his own act, whether at the time he was a responsible moral agent or not. Nothing can be clearer than that the words, "sane or insane," were introduced for the purpose of excepting from the operation of the policy any intended self-destruction, whether the insured was of sound mind or in a state of insanity. No one could be misled by them; nor could an expansion of the language more clearly express the intention of the parties.

The reasoning of the cases to which we have referred commends itself. We can imagine no more reason for depriving an insurance company of the right to limit its liability by contract against self-destruction resulting from insanity, than from other causes, the risks of which may be expressly excepted from the contract. There is, as has been seen, nothing in the nature of the contract affecting public policy or morality. It contravenes no rule of common or statute law; and we are at a loss to state a valid reason why the liberties of both the insurer and insured, to make such contract as seems best to them, should be invaded by the courts, by placing a construction upon the words of the contract that clearly was not intended by the

parties at the time it was made, or by reading words into the contract that are plainly not there, nor intended by the parties to be put in it, but on the contrary, a clear intention to exclude them.   It is axiomatic that a court will not make a better contract for a person than he has made for himself.   It follows, therefore, that in our opinion, the trial court erred in overruling the demurrer to the replications to the pleas of the defendant.   The judgment of the City Court will be reversed and the cause remanded, with directions to sustain the demurrer to the replications.