## Emma Seitzinger v. Modern Woodmen of America.

1. INSURANCE—*Certificate to be Void if Insured Dies by His Own Hand, Whether Sane or Insane.*—A certificate of insurance containing a stipulation that it shall be void and of no effect if the insured dies by his own hand, whether sane or insane, is valid, and there can be no recovery, even if the insured was utterly bereft of reason at the time of committing the act. In such case it is wholly immaterial what the insured's mental condition was.

2. SAME—*Rules of Construction.*—The purpose of an insurance contract is indemnity, and the law will lean to that construction which will effect the purpose of the contract. Where the language of the contract as a whole is susceptible of more than one meaning, the court will give to it that meaning more favorable to the insured.

3. CONTRACTS—*Courts Must Interpret the Contract Made by the Parties Themselves.*—In insurance contracts as well as in other contracts, it is for the courts to interpret the contract made by the parties themselves, and not to make a contract for them. Where the subject-matter is proper to be dealt with by contract, the contract itself is neither contrary to law nor public policy, the parties are competent to contract, and, in the absence of fraud or other vitiating condition do actually contract, and evidence the same as the law requires, the courts must respect such contracts.

4. WORDS AND PHRASES—*Suicide Defined.*—Suicide is the act of designedly destroying one's own life.

Assumpsit, upon a benefit certificate. Appeal from the Circuit Court of White County; the Hon. PRINCE A. PEARCE, Judge presiding. Heard in this court at the August term, 1902. Affirmed. Opinion filed November 24, 1902.

N. C. BAINUM and C. S. CONGER, attorneys for appellant.

J. W. WHITE and Ross GRAHAM, attorneys for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action of assumpsit, in the Circuit Court of White County, by appellant against appellee, to recover on a certificate of insurance.

The declaration is in the usual form, setting up the certificate upon which the suit is based, *in haec verba.* Among other provisions, the certificate contains the following:

"If any member holding this certificate shall, * * * within three years after becoming a beneficial member of this society, die by his own hand, whether sane or insane, * * * then this certificate shall be null and void and of no effect, and all moneys which have been paid, and all rights and benefits which may have accrued on account of this certificate, shall be absolutely forfeited, and this certificate shall become null and void." And "This certificate and contract is and shall be subject to forfeiture for any of the causes of forfeiture which are now prescribed in the by-laws of the society, or for any other causes of forfeiture which may hereafter be prescribed by this society by amendment to said by-laws."

The assured was adopted as a member of the order and the certificate delivered on the 22d day of January, 1901, and was accepted by him in the following agreement: "I hereby accept the above benefit certificate and agree to all the conditions therein contained." Signed, "Eli Seitzinger." On the 11th day of November, 1901, the assured came to his death. Notice and proofs of death are duly averred.

To this declaration appellee pleaded, that by the terms of the contract upon which the suit is based, it was agreed

that if the assured, within three years, died by his own hand, whether sane or insane, the certificate should be null and void, and that all moneys paid to appellee should be forfeited; and averring that the assured did, within three years, die by his own hand. And appellee also pleaded that the assured was subject to all the by-laws of the society, and that at the time he became a member and at the time of his death, there was a by-law in full force as follows:

"If any member holding a benefit certificate heretofore or hereafter issued by this society, shall, within three years after becoming a beneficial member of this society, die by his own hand, whether sane or insane, his benefit certificate shall become null and void by reason of said act, and the payments thereon shall be absolutely forfeited."

And averring that the assured did, within three years, die by his own hand.

To these pleas appellant replied that at the time assured came to his death by his own hand, he was "wholly insane, totally unconscious of the manner of his death, and wholly and totally incapable, by reason of such insanity, of forming an intention of taking his own life, and did not, at the time, comprehend or understand the physical nature and result of his act, and did not intend to take his life," and that his death "was not the result of any intentional act of him."

To these replications appellee demurred. The court sustained the demurrer, dismissed appellant's suit and rendered judgment in favor of appellee for costs.

Persons have procured life insurance in contemplation of self-destruction and afterward, in pursuance of such purpose, taken their own lives. When such facts have been proven, the courts have held that there could be no recovery, because of the fraud existing at the time of entering into the contract, although it contained no provision against self-destruction. Others have procured insurance without any fraudulent purpose at the time and afterward caused their own death. In such case, where there was no provi-

sion in the contract against self-destruction, the courts have held that there could be a recovery, and where there was such provision, have, so far as we are advised, always held the right to recover dependent upon the meaning of the contract, and have not, in the absence of a statute to that effect, held that there is any legal limitation upon the power of the parties to cover and control the whole subject by contract.

Many cases have been before the courts where the contract provided that the policy should be void in case the assured should come to his death by suicide. "Suicide is the act of designedly destroying one's own life." By common law, suicide was a felony. In such cases courts have held, as the term imports, that one so insane as not to understand the moral character of the act, incapable of forming guilty intent, could not, while in that condition, commit suicide; that self-destruction was not suicide. Here it must be borne in mind that it was not the insanity of the insured that availed in law, to change the contract or mitigate its effect. The contract stood in law in full force, but suicide was not established as a fact in the case, and therefore no forfeiture. No suicide in fact, no forfeiture in law.

Most courts, including our own Supreme Court (168 Ill. 419), have classed with the above, certain cases in which the forfeiture clause did not contain the word suicide, or its exact equivalent in meaning, but where the language used did not exclude the element of intent on the part of the assured at the time of committing the act of self-destruction.

Some courts place in a separate class cases in which the forfeiture clause does not contain the word suicide, or other language which may be held to be its equivalent in meaning, but in which the language used does not exclude the element of intent, and in such cases require proof of a more extreme degree of insanity than is required under rule applied to suicides. This is upon the theory that there may be intentional self-destruction that is not suicidal, *i. e.*, the act may proceed from the intent of a mind so far insane

as to lack the moral quality requisite in a true case of sui-
cide. Counsel for appellant concede that the case at bar
may be so classified, and have met this supposed condition
by the degree of insanity set up in their replication.

This classification does not change the fundamental prin-
ciple upon which all the cases must be decided. That prin-
ciple recognizes that provisions in an insurance contract
relieving the insurer from liability in case of self-destruc-
tion on the part of the assured are lawful and proper. The
primary and controlling question always is, what does the
particular language as used in the particular contract mean?

Appellant's counsel cite the following cases : Grand
Lodge I. O. M. A. v. Wieting, 168 Ill. 408; Fidelity &
Casualty Co. v. Weise, 182 Ill. 496; Charter Oak Life Ins.
Co. v. Rodel, 5 Otto, 232; Mutual Life Ins. Co. v. Terry, 15
Wallace, 580; Manhattan Life Insurance Co. v. Broughton,
109 U. S. 121; Mutual Benefit Life Insurance Co. v. Daviess,
Exr., 87 Ky. 541; Nelson v. The Equitable Life Assurance
Society, 73 Ill. App. 133; and they refer to Bigelow v. Berk-
shire Life Ins. Co., 3 Otto, 284.

In 168 Ill. the language is, " Should I commit suicide;"
and in 109 U. S. the language is, shall "die by suicide."
These were both plain suicide cases. In 182 Ill. the suit
was based on an accident policy. The question at issue was
one of fact as to whether the assured came to his death
through external, violent and accidental means. The case
was reversed solely because of an erroneous instruction as
to burden of proof upon that issue. This case throws no
light upon the controlling question in the case at bar. In
5 Otto, the language is, shall "die by his own hand." In
15 Wallace the language is the same, shall "die by his own
hand." And so in 87 Ky., the language is, shall "die by
his own hand." This language standing wholly unqualified,
when construed most strongly against the insurer, warrants
the reasonable inference that the assured may have under-
stood that it meant to include only his intentional act;
and these courts so held, as courts usually have in such
cases. The element of intent being a material part of the
contract, the question as to sanity was also material.

In 3 Otto the case was more like the case at bar, but not so strong in favor of the insurer, because that case was somewhat embarrassed by the use of the word suicide, though that word did not stand unqualified. The language is, shall "die by suicide, sane or insane." While the exact question before us was not decided in that case, the whole argument and weight of the opinion is against appellant's position and strongly supports the position of appellee.

It is known by all who have given the subject any attention that self-destruction by assured persons has become very frequent, and that in almost all such cases it is sought to avoid the effect of provisions in the contract relieving the insurer from liability in such cases, by setting up insanity of the assured at the time of committing the prohibited act. And, "as the line between sanity and insanity is often shadowy and difficult to define," and the line between one degree of insanity and another is still more so, experience demonstrated that any clause in such contract dependent upon the mental condition of the assured at the time of the act was practically of no avail; and, having both a lawful and moral right to do so, and prudence on their part and justice to their surviving policy holders and members demanding it, insurance companies and fraternal and beneficial societies generally, have deemed it their duty to so provide in their contracts as to take the whole question as to sanity or insanity out of the domain of controversy. To this end such provisions as the one in the case at bar have been made part of the contract. These provisions are of comparatively recent date, and cases containing them form a distinctively separate class. The language is, shall "die of his own hand, sane or insane," or other form clearly indicating a purpose to exclude all question as to mental condition. Where there is such a stipulation in the contract, the modern authorities are almost uniformly to the effect that it is valid and that there can be no recovery, even if the assured was "utterly bereft of reason" at the time of committing the act. In such case "it is wholly immaterial what the assured's mental condition was."

All the following cases are directly in point.    All discuss and determine the exact question at issue in the case at bar, and all hold that in such state of case there can be no recovery : DeGogorza v. The Knickerbocker Life Ins. Co., 65 N. Y. 232; Tritschler v. Keystone Mutual Benefit Association, 180 Pa. St. 205; Sargeant v. Nat. Life Ins. Co., 189 Pa. St. 341; Billings v. Accident Ins. Co., 64 Vt. 78; Scartch v. Security Mutual Life Society, 75 Iowa, 346; Brower v. Supreme Lodge National Reserve Association, 74 Mo. App. 490; Haynie v. Knights Templars & Masons Indemnity Co., 139 Mo. 416; Dennis v. Union Mutual Life Ins. Co., 84 Cal. 570; Spruill v. Northwestern Mutual Life Ins. Co., 120 N. C. 141; Supreme Commandery Knights Golden Rule v. Ainsworth, 71 Ala. 436; Travellers' Ins. Co. v. McConkey, 127 U. S. 661; Salentine v. Mutual Benefit Life Ins. Co., 24 Fed. Rep. 159; Schmidt v. Home Life Ins. Co. (Cinn. Ohio Sup. Ct.), 8 Ins. L. J. 77; Supreme Tent Knights of Maccabees v. Hammers, 81 Ill. App. 560; Supreme Lodge Knights of Pythias v. Clarke, 88 Ill. App. 600; Supreme Court of Honor v. Peacock, 91 Ill. App. 632; Northwestern Mutual Life Ins. Co. v. Churchill (two cases), 105 Ill. App. 159, 164.

It is claimed that our Supreme Court has not had the precise question involved in the case at bar under consideration.    We think it fair to assume that the question was under consideration by that court, in Clarke v. Supreme Lodge Knights of Pythias, when it had the case on appeal from the Appellate Court.    True, the Appellate Court was reversed by the judgment of the Supreme Court, but not upon the merits of the case.    The case as it came from the Supreme Court is reported in 189 Ill. 639.    It does not contain a word condemning the conclusions reached and held by the Appellate Court touching the question in the case at bar.    The reversal was wholly upon a question of Appellate Court practice, as we understand the case, and the Supreme Court fully sustained the Appellate Court upon the point in question.    The question there was the same as in the case at bar; the language of the forfeiture

clause of the contract contained the words " whether sane or insane," the assured had taken his own life, and counsel were seeking to avoid the forfeiture by establishing as a fact that the assured was to an extreme degree insane at the time.   The question in that case arose upon the trial, and came before the Appellate and Supreme Courts upon the following instruction given by the trial court:

"The court instructs the jury, if you believe, from the weight of the evidence, that Frank E. Clarke took his own life, and that he at the time was so insane as to be incapable of forming an intention to take his life, and did not comprehend and understand the physical nature and result, of his acts, then the fact of his taking his own life under such circumstances would not defeat. a recovery for the full amount of the policy."

The Appellate Court held that insanity of the assured in such case was of no avail; that the terms of the contract included self-destruction, when insane as well as when sane; that the instruction did not correctly state the law, and that the court erred in giving it, and for this error alone the Appellate Court reversed the case.  The Supreme Court fully sustain the Appellate Court in all this, but hold that instead of directing a judgment, as the Appellate Court did, it should. have remanded the case, so that the trial court might correct its error.   The court say :

"The error was of a nature to be corrected upon another hearing   *   *   *   and it was the duty of the Appellate Court to remand the cause and award a new trial, so that the error may be obviated."   '

We might be pardoned for here stating that the Appellate Court was led to enter the order directing a judgment, instead of remanding for a new trial, by its understanding of the meaning and purpose of a stipulation of the parties found in the record.   The Supreme Court and Appellate Court are in perfect accord in the " Clarke case " as to the merits of the case, differing only as to the effect the stipulation should have upon the form of the Appellate Court's judgment.   The Supreme Court either inadvertently overlooked that stipulation, or thought it of not sufficient

importance to warrant the practice adopted or to deserve comment.

The replication in the case at bar admits the terms of the contract as pleaded, and that the assured came to his death as pleaded. The question presented is whether the insanity of the insured at the time he took his own life shall avail to avoid the forfeiture.

The authorities all lay down the law that in insurance contracts, as well as in other contracts, it is for the courts to interpret the contract made by the parties themselves, and not to make a contract for them; that where the subject-matter is proper to be dealt with by contract, and the contract itself is neither contrary to law nor public policy, and the parties are competent to contract, and in the absence of fraud or other vitiating condition do actually contract, and evidence the same as the law requires, courts must respect such contracts. It is then for the court to determine, only, what the contract means.

All the authorities agree, or so nearly all that it is now universally accepted as the true rule, that an insurance company or society may, where there is no statute to the contrary, lawfully provide in its contract against liability in case of self-destruction on the part of the assured.

The questions that have arisen in this field and sometimes confused the courts have not been as to the power of the parties to make such contracts, but as to the meaning of the contracts they did make with reference to the subject.

The contract in the case at bar contains the provision that if the assured " shall within three years die by his own hand, whether sane or insane," his insurance shall be forfeited, his " certificate shall become null and void." Within nine months he was dead; had died by his own hand. True, he was insane; but the clause in his contract includes that condition. True, he was insane to an extreme degree, but the language in his contract, when given no more than its plain and ordinary meaning, includes all degrees of insanity. He was insane. The parties to this contract undertook and intended to exclude all liability in case of self-destruction,

and to exclude and put all question as to sanity or insanity out of the domain of controversy, and to that end chose apt and comprehensive words that had a plain, precise and definite meaning. The question is, shall this contract be respected by the court?

To hold that the words, shall die by his own hand, whether sane or insane, as these words are used in this contract, do not include death by his own hand while insane, would be to give material and controlling words of the contract no meaning. And to hold that while these words may include death by the assured's own hand while insane to some degree, but do not include such death while insane to a greater degree, would be to trifle with the plain meaning of words—would be stultifying jugglery.

In reaching the conclusions above expressed as to the meaning of the language of the contract before us, we have not been unmindful of the wholesome and oft-repeated rules laid down by all courts as governing in the construction of insurance contracts, such as: "Courts do not favor forfeitures;" "The language of an insurance contract is always to be construed strictly against the insurer;" "The purpose of an insurance contract is indemnity, and the law will lean to that construction which will effect the purpose of the contract." All these rules, and others of like character, mean that where the language of the contract as a whole is susceptible of more than one meaning the court will give to it that meaning more favorable to the assured. These rules neither require nor permit courts to give no meaning to plain and controlling words of a lawful and proper contract when such words are not in any manner nor to any degree superseded, counteracted or qualified by other language of the contract. Nor do these rules require or permit a court to give such words meanings which they do not, as used, in any sense import.

We find no error in this record. The judgment of the Circuit Court is affirmed.