## THE SUPREME COUNCIL OF THE ROYAL ARCANUM

### *v.*

### EUGENIE BRUDI PELS.

*Opinion filed April 20, 1904.*

1. BENEFIT SOCIETIES—*"suicide" means voluntary, intentional self-destruction.* The word "suicide" means voluntary, intentional self-destruction, and not self-destruction by one who at the time is incapable, by reason of unsoundness of mind, of resisting an insane impulse to take his own life or to understand the general nature or consequences and effect of his act.

2. SAME—*suicide clause construed.* A suicide clause in a by-law exonerating the society from liability in case of suicide by the member unless the beneficiary shall prove affirmatively that the member had been judicially declared insane, or was under treatment for insanity or was in the delirium of other illness, merely relieves the beneficiary from proving the degree of insanity in case he proves any of the facts specified, but does not necessarily require proof of any of such facts to warrant a recovery.

*Supreme Council Royal Arcanum* v. *Pels,* 110 Ill. App. 409, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

H. H. C. MILLER, and W. S. OPPENHEIM, for appellant.

WILLIAM VOCKE, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

In this an action of assumpsit brought by the appellee, against the appellant, to recover upon a mortuary certificate issued by the appellant on the sixth day of April, 1899, providing for the payment of a benefit in the sum of $3000 to the appellee in the event of the death of her husband, Emil Ernst Pels, judgment was entered in the sum of $3000 in the superior court of Cook county in favor of the appellee, and the judgment was affirmed by

209—3

the Branch Appellate Court for the First District. A further appeal perfected by the Royal Arcanum, appellant, has brought the record into this court.

To the declaration the appellant filed a plea of the general issue and also a special plea in bar. The special plea averred: "Emil Ernst Pels, husband of plaintiff, in his application for membership in the defendant order, dated November 28, 1895, covenanted that he and his beneficiaries would and should conform to and abide by the constitution, laws, rules and usage of the said council and order then in force or that might thereafter be adopted; that section 473 of the code of constitutions and laws of the defendant in force at the time of the death of the said Pels was as follows: 'No benefit shall be paid upon the death of a member who shall commit suicide within five years from and including the date of his initiation, * * * unless the person or persons claiming under such certificate or membership shall establish and prove affirmatively that prior to such suicide the member had been judicially declared insane, or was under treatment for insanity at the time the act was committed, or was then in the delirium of other illness,' and that, in violation of the said section, said Pels did, within five years from his initiation, commit suicide by taking poison, not being then judicially declared insane, nor under treatment for insanity, nor in the delirium of other illness." The assured came to his death by his own act on the 21st day of May, 1900, being within the period of five years after his initiation into the appellant order.

The trial court, in ruling on the admissibility of evidence and in granting and refusing instructions, construed the word "suicide," used in the by-law, to mean "voluntary, intentional self-destruction," and that the by-law, therefore, did not present a bar to a right of recovery, if, when the deceased took his own life, he was so affected with insanity as to be unconscious of the act

or of the physical effect thereof, or was driven to the commission of the fatal act by an insane impulse which he had not the power to resist. In *Grand Lodge I. O. M. A. v. Wieting*, 168 Ill. 408, the phrase "commit suicide" was declared to be of like meaning as those other phrases, "take his own life," "die by his own hand," and "die by his own act," and that all of such phrases conveyed the idea of voluntary and intentional self-destruction. "Suicide is the act of designedly taking one's own life." (24 Am. & Eng. Ency. of Law,—1st ed.—p. 490.) In the *Wieting case, supra*, the application for the beneficiary certificate, and the certificate, provided that should the assured commit suicide the beneficiaries should only be entitled to receive the amount which had been paid in as premiums or assessments on the policy. We there held that under such provisions of the certificate only the return of the amount which had been paid into the benefit fund could be recovered if the assured, while in the possession of his ordinary reasoning faculties, intentionally took his own life, but that if his reasoning faculties were so far impaired that he was unable to appreciate the moral character, general nature, consequences and effect of the act of self-destruction, or that he was impelled thereto by an insane impulse which he had not the power to resist, the entire amount of the mortuary benefit might be recovered. That is, we held that the words "commit suicide" were applicable only to a case of voluntary, intentional self-destruction,—the act of a sane mind. The trial court therefore properly so construed those words in the by-law in question, and for that reason ruled that the by-law had no effect to exonerate appellant from liability if the death of the member was occasioned by his own act at a time when such assured was incapable, by reason of unsoundness of mind, to resist an insane impulse to take his own life, or to understand the moral character, general nature, consequences and effect of the fatal act.

The rulings of the court on questions of the admission or rejection of testimony, and in giving and refusing instructions, were in harmony with the construction given by the court to the meaning of the words "commit suicide."

One may have sufficient mental power to form the intention to do the physical act which will result in death and also intend to bring about that result by such act, yet if he is driven to the formation of that intention and the commission of the act by an insane impulse which he has not the power to resist and which overwhelms his moral nature, his death is not regarded as a voluntary and intentional act of self-destruction, but as though it were the result of accident or of some irresistible external force. Such would have been the construction given to the by-law if it had gone no farther than to declare that the appellant should be exonerated from liability to pay a mortuary benefit if the assured should commit suicide within five years from the date of his initiation. But the effect of the further provisions of the by-law was to empower the beneficiaries to fix liability to pay the beneficiary fund by showing that the assured had been officially declared insane, or was under treatment for insanity at the time he took his life, or was then in the delirium of other illness. Under the by-law, therefore, proof that the assured had been judicially declared insane, or was under treatment for insanity or was in the delirium of other illness at the time he took his life would effectually fix the liability of the appellant to pay the mortuary benefit. That is, such proof was equivalent to that which the law would require to establish liability in the absence of the qualifying provisions of the by-law, namely, that the assured was affected with unsoundness of mind to such a degree that his moral nature had been overcome and he had lost the power to resist an insane desire or impluse to take his own life. The effect, therefore, of the qualifying provisions of the by-law was to relieve the beneficiaries from the duty of producing

proof to establish the degree of insanity with which the assured was affected in all cases where the assured had been judicially declared to be insane, or where, at the time of his death, he was under treatment for insanity or was then in the delirium of other illness, but it had no effect to exclude such beneficiaries from participation in the benefit fund in cases where the assured had not been judicially declared insane or was not under treatment for insanity, but whose mental faculties at the time he committed the fatal act were impaired by insanity to such an extent that he was unable to understand the moral effect of the act and its general nature and character from a moral point of view, or was so weakened and unsound that he was unable to resist an insane impulse to take his own life. The beneficiaries might avail themselves of the advantages offered by the by-law, but there was no reason, if they could do so, why they might not take upon themselves the greater burden of proof which the law would cast upon them in the absence of the qualifying phrases of the by-law.

These observations answer all of appellant's contentions save a refined, if not hypercritical, criticism of an instruction given by the court at the request of the appellee relative to the effect of the verdict of the coroner's jury as *prima facie* proof of the statements therein contained. The court gave, as requested, an instruction as to the verdict of the coroner's jury which supplemented that given on behalf of the appellee, and removed all just ground of complaint as to the accuracy and correctness of the charge, as a whole, on this branch of the case.

The judgment must be and is affirmed.

*Judgment affirmed.*