## HILL *v.* STATE OF INDIANA.

[No. 23,980. Filed December 12, 1923. Rehearing denied June 24, 1924.]

1. APPEAL.—*Briefs.—Motion for New Trial.—Points and Authorities.—Waiver.*—On appeal only such specifications in a motion for a new trial discussed and urged by appellant in his brief will be considered as all others are waived. p. 691.

2. HOMICIDE.—*Abortion.—Dying Declarations.—Evidence.—Admissibility.*—Where it is charged that death resulted from an abortion, a statement made by the deceased is admissible in evidence, if it concerns the *res gestae,* and made while *in extremis.* p. 692.

Hill v. State—194 Ind. 688.

3. HOMICIDE.—*Abortion.*—*Evidence.*—*Dying Declarations.*—*Admissibility.*—*Questions for Court.*—The admissibility of dying declarations in a prosecution for an abortion is a question for the trial court, and will not be disturbed unless it is manifestly erroneous. p. 693.

4. HOMICIDE.—*Abortion.*—*Evidence.*—*Dying Declarations.*—*Admissibility.*—In a prosecution for an abortion where it appeared from the evidence that the deceased was in extreme pain, features drawn, pulse rapid and weak, abdomen distended, that she expressed the belief she was going to die and there was evidence that she was in a dying condition, *held* the court was justified in admitting her statements concerning the alleged abortion. p. 693.

5. TRIAL.—*Evidence.*—*Motion to Strike Out.*—*Certainty.*—A motion to strike out a part of an answer to a question should describe the part asked to be stricken out with reasonable certainty. p. 694.

6. TRIAL.—*Motion to Strike Out.*—*Evidence.*—*Competency.*— Where part of the answer to a question included in a motion to strike out was competent, it was not error to overrule the motion, even though some of the evidence included in the motion was incompetent. p. 695.

7. HOMICIDE.—*Abortion.*—*Evidence.*—*Dying Declarations.*—*Admissibility.*—In a prosecution for an abortion evidence of a statement by the deceased that she had gone to defendant's office on the date of the abortion and arrived there about nine o'clock was competent as it was a part of the *res gestae* of which she could have testified if living. p. 695.

8. CRIMINAL LAW.—*Appeal.*—*Review.*—*Evidence.*—*Weight and Sufficiency.*—The Supreme Court on appeals will not weigh the evidence and, if considering that most favorable to the State there was evidence which could reasonably be believed, and which would justify the jury in finding the defendant guilty, the verdict will not be disturbed, although evidence to the contrary may outweigh the evidence of guilt. p. 696.

9. HOMICIDE.—*Abortion.*—*Evidence.*—*Sufficiency.*—In a prosecution for an abortion evidence *held* sufficient to sustain a judgment of conviction. p. 697.

10. HOMICIDE.—*Abortion.*—*Evidence.*—*Dying Declarations.*—*Admissibility.*—In a prosecution for an abortion causing death, evidence that the deceased stated that she had gone to another doctor four or five weeks prior to the abortion was not competent as it was not part of the *res gestae.* p. 698.

11. CRIMINAL LAW.—*Evidence.*—*Dying Declarations.*—*Admission.*—*Harmless Error.*—The accused cannot complain of the

introduction in evidence of the deceased's dying declaration to certain facts, where he offered evidence to prove the same facts. p. 698.

12. HOMICIDE.—*Abortion.—Evidence.—Dying Declarations.—Admission.—Harmless Error.*—In a prosecution for an abortion causing death, incompetent evidence that the deceased stated that she had gone to another doctor four or five weeks prior to the abortion alleged, "but he hadn't done her any good," *held* not harmful to defendant as it did not tend to implicate him. p. 699.

13. HOMICIDE.—*Abortion.—Dying Declarations.—Contradictory Evidence.—Admissibility.*—In a prosecution for an abortion causing death, the defendant was entitled to prove any statement of the deceased which would contradict any material part of her dying declaration. p. 699.

14. WITNESSES.—*Direct Examination.—Leading Questions.—Assuming Facts.*—The court properly sustained objections to questions asked a witness that were leading, setting out conversations and asking if such conversation occurred, or assumed the existence of facts to which the witness had not testified. p. 699.

15. CRIMINAL LAW.—*Appeal.—Review.—Instructions. — Hypothetical Questions.—Province of Jury.*—An instruction that told the jury that they were not to take for granted that statements contained in hypothetical questions were true, but were to determine from the evidence whether such facts had been proved, and that hypothetical questions not proved were of little or no weight, but that all reasonable doubt on these matters was to be resolved in favor of the defendant, *held* not to invade the province of the jury. p. 700.

From Marion Criminal Court (48,880); *James A. Collins*, Judge.

Prosecution by the State of Indiana against Albert A. Hill for abortion. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Holmes & McCallister*, for appellant.

*U. S. Lesh*, Attorney-General, and *Mrs. Edward Franklin White*, Deputy Attorney-General, for the State.

GAUSE, J.—The appellant was convicted in the court below on an indictment by the Grand Jury of Marion

county, charging him with the crime of abortion upon one Sarah Karabell. The indictment was in four counts, but at the conclusion of the evidence the court withdrew from the jury's consideration the third and fourth counts of the indictment, and appellant was found "guilty of abortion as charged."

The first count charged that an abortion was procured by the use of an instrument unknown to the grand jury, and that a miscarriage resulted therefrom. The second count was the same as the first, except it. charged that the death of said Sarah Karabell resulted from such abortion.

The appellant filed a motion for a new trial, in which he specified, among other things, that the verdict was contrary to law, and that the court also committed certain errors, therein specified, in ruling on the introduction of evidence. Error was also alleged in the giving and the refusal to give certain instructions, but in his brief appellant only discusses and objects to one instruction given.

Appellant has assigned as error the ruling of the court on his motion for a new trial. We will only consider such specifications in his motion for a new

1. trial as appellant discusses and urges in his brief, as all others are waived.

Although appellant first discusses his proposition that there was no evidence to sustain the conviction and that therefore the verdict was contrary to law, we will first discuss his objection to the admission of so-called dying declarations of said Sarah Karabell, and also his objection to a part of said declaration, so that we may know what legal evidence there was for the jury to consider in determining his guilt or innocence.

The court, over the objection of appellant, permitted Dr. C. E. Cox to testify to the following conversation with said Sarah Karabell: "Q. What, if anything, did

she say to you after that with reference to what had happened in Dr. Hill's office?" "A. She told me that on the morning previous she went to Dr. Hill's office, and arrived there at nine o'clock for the purpose of having an abortion performed. Shortly after going into his office, she was given a chloroform anesthetic and was asleep until she awakened about one o'clock. At that time, she was having considerable hemorrhage from the vagina, and Dr. Hill had difficulty in getting it stopped; in fact, did not get it stopped in time for her to go home until about five or six o'clock. She was too weak to go home alone and Dr. Hill took her home in his machine and carried her in the house."

Said witness also was permitted, over objection, to give the following: "Q. Tell the jury what she said at that time with reference to what had occurred at Dr. Hill's office." "A. She again told me that she had gone to Dr. Hill's office on the previous morning about nine o'clock, for the purpose of having an abortion performed, that shortly after going to Dr. Hill's office she had been given a chloroform anesthetic, and was under this chloroform anesthetic until the time she awakened about one o'clock; that when she awakened she was having considerable hemorrhage and Dr. Hill was having considerable trouble getting it stopped, and did not get it stopped until about five or six o'clock, when he took her home in his machine and carried her into the house."

It is urged that no proper foundation had been laid for the introduction of these statements of the deceased as a dying declaration.

A statement made by the deceased in a case of this kind, where it is charged that death resulted from the abortion, is admissible in evidence, if the statement concerns the *res gestae*, and is made under a sense of certain and speedy death, that is, while

2.

*in extremis. Montgomery* v. *State* (1881), 80 Ind. 338, 41 Am. Rep. 815; *Seifert* v. *State* (1903), 160 Ind. 464, 98 Am. St. 340.

It appeared from the evidence, which had been introduced before these statements of the deceased were admitted, that said Sarah Karabell had been brought home by appellant some hours previously, suffering greatly and was unable to walk. Dr. Cox testified that she was in a state of extreme pain, which was apparent in her face. She was very pale. Her features were drawn. Her lips were pale, pulse very rapid and weak, respiration rapid and temperature subnormal. Her abdomen was markedly distended. That she said, before the first statement was made, that she was not going to get well, and before the other statement was made, that she was going to die and was afraid to die. The doctor also testified that she was, at the times such statements were made, in fact, in a dying condition. The admissibility of these statements was first for the trial court to determine, and that decision will not be disturbed unless it is manifest that the facts did not warrant such ruling. *Gipe* v. *State* (1905), 165 Ind. 433, 1 L. R. A. (N. S.) 419, 112 Am. St. 238.

It appearing from the evidence that she was in extreme pain, which was apparent in her face, that her features were drawn, her pulse very rapid and weak, her abdomen distended, that she had expressed the belief she was going to die, and the testimony of Dr. Cox that she was at such time, in fact, in a dying condition, it cannot be said that the court was not justified in admitting her statements concerning the alleged transaction resulting in her death. *Gipe* v. *State, supra; Williams* v. *State* (1907), 168 Ind. 87.

It is next urged that the court erred in refusing to strike out a part of the declaration of said deceased

which was admitted. The appellant's motion to strike out part of said statement was as follows:

"I wish further at this time to move to strike out that part of the answer which says that Sarah Karabell said she went to the office of Dr. Hill for the purpose of having an abortion, for the reason that it is not a statement of fact upon the part of the declarant, but is a mere expression of an opinion and conclusion upon her part; for the further reason that it is a matter that antedates the question involved here, which is one of death, which is the *res gestae,* and only in a proposition of that kind may dying declarations be introduced."

The first sentence of the declaration, as testified to by Dr. Cox, was as follows: "She told me that on the previous morning she went to Dr. Hill's office, and arrived there at nine o'clock, for the purpose of having an abortion performed."

Although it is not clear just how much of such statement the appellant intended to include in his motion, yet it may reasonably be assumed that he intended to include all of this first sentence, because the last reason he gave for his motion was that it antedated the question here involved, evidently meaning that his objection was that it recited events that took place before the acts that caused the death. If this objection applied to any part of said sentence, it applied to the entire sentence. If the appellant had in his mind to object only to the part of said sentence containing the following, namely, "for the purpose of having an abortion performed," he did not so express his objection.

A motion to strike out a part of an answer should describe the part asked to be stricken out with reasonable certainty. *O'Brien* v. *Knotts* (1905), 165 Ind. 308; *Wysor Land Co.* v. *Jones* (1900), 24 Ind. App. 451. If the whole first sentence of the declaration in question

was not included in the motion to strike out, it is certain that the statement that, "on the morning previous she went to the office of Dr. Hill," was included.

If part of the answer included in the motion was competent, then it was not error to overrule the motion, even though some of the evidence included in the 6. motion was incompetent. *Jones* v. *State* (1889), 118 Ind. 39; *McGuffey* v. *McClain* (1892), 130 Ind. 327.

The statement of Sarah Karabell that on the morning previous she went to Dr. Hill's office and arrived there about 9 o'clock, was certainly competent. 7. It was a part of the *res gestae* to which she could have testified if living. It is not necessary to decide whether the further statement as to her intention in going there was competent or not, because no separate motion to strike out that part was made. However, this question is different from the one decided in *Montgomery* v. *State, supra,* where the declaration was as to the purpose of the defendant in performing the operation. Here the statement was as to the purpose of the declarant in doing the act, not the purpose of the defendant. See on this question: *White* v. *State* (1876), 53 Ind. 595; *Shenkenberger* v. *State* (1900), 154 Ind. 630; *Seifert* v. *State, supra;* Wigmore, Evidence §581; *Redmond* v. *Commonwealth* (1899), 21 Ky. Law Rep. 331, 51 S. W. 565; *Fuller* v. *State* (1898), 117 Ala. 454, 23 So. 688. The last case being cited in *Shenkenberger* v. *State, supra.* We think no error was committed by the court either in admitting the declaration or in refusing to strike out the part thereof included in the motion to strike out.

We shall now consider whether there was evidence to justify the conviction.

This court will not weigh conflicting evidence and, if considering that most favorable to the State, there

was evidence which could reasonably be believed and which would justify the jury in finding appellant guilty, we cannot disturb the verdict, although evidence to the contrary may outweigh the evidence of his guilt.

The rule for the guidance of this court in reviewing a verdict of a jury is very different from that which governs the jury in determining the guilt or innocence, or which governs the trial court in passing upon the verdict. *Wrassman* v. *State* (1921), 191 Ind. 399.

There was evidence in the case at bar tending to show: That Sarah Karabell was a young woman about 19 years of age at the time of her death, on July 24, 1918; that on Monday morning, July 22, 1918, she was in normal health, except that she was pregnant, which condition was about five months advanced; that on this morning she got ready to go to work, as was her custom, and left her home in Indianapolis about 8 o'clock; that she went to appellant's office and arrived there about 9 o'clock; that she had made statements theretofore about wanting to get relieved from her pregnancy; that a friend of hers, to whom she had made these statements, suggested she go to Dr. Hill, the appellant, for an examination; that shortly after arriving at the office of appellant, he put her under a chloroform anaesthetic and she was under this until about one o'clock; that when she came out from under this anaesthetic she was having, considerable hemorrhage from the vagina, and appellant was having trouble getting it stopped; that he did not get it stopped until about five or six o'clock, when he took her home in his automobile; that he had to carry her to his automobile and from it into her home; that he laid her on the bed and, in answer to a question as to what was the matter with her, replied that she came to his office, that she was sick and he relieved her and put a cloth on her. When

asked again what was the matter he "winked" at the questioner and said, "She came to my office and if you leave her alone she will be all right, nature takes its course." That in a conversation with deceased's brother, on the occasion of his second visit to the home, appellant, on being asked if he did it, said, "Yes," he did it, but not to bother her, she would be all right. That after being brought home, the girl suffered great pain and complained of a pain in her side. That the family called appellant about nine or ten o'clock that night and he came again, but made no examination and replied that she would be all right, that nature would take its course.

In response to questions by appellant's counsel, it was shown that she said that night that Dr. Hill fixed her up all right and that she would be all right.

9. That later that night or early the next morning Dr. C. E. Cox was called by the girl's family, and he found her suffering great pain, with a distended abdomen, pulse weak, temperature below normal, and that at that time she was suffering from a rupture of the uterus, with internal hemorrhage. That Sarah Karabell was taken to a hospital on the day after she was brought home, but that no operation was performed or attempted, because of her weakened condition; that nothing was done from the time she was brought home by appellant, until her death that would have caused the conditions found to exist by a *post mortem;* that the *post mortem* disclosed a rent in the uterus about two and one-half or three inches long; that the fetus was in the abdominal cavity. It was lying inside and around the bowels. It was mutilated, one arm was off and the baby's bowels were out of its cavity. There was also a gallon of blood and the placenta in the abdominal cavity. That her death was caused by shock and bleeding, which were induced by an opening in the womb; that

the opening in the womb was caused by some blunt instrument; that such injury could not have been self-inflicted; that the injury to the fetus must have been caused by some sharp instrument being introduced in trying to drag out the fetus; that the fetus and placenta were not forced into the abdominal cavity by a spontaneous rupture of the uterus.

Of course, there was evidence to the contrary, on behalf of appellant, which it was the duty of the jury to consider in weighing the evidence.

It is not within our province to weigh the evidence, and there was ample evidence, which if believed by the jury, warranted them in finding appellant guilty.

It is urged by appellant that the court committed error in admitting in evidence another statement of Sarah Karabell, made to the witness Dr. Cox at

10. the same time she made the declaration which we have considered heretofore.

The question asked Dr. Cox and the answer he made are as follows: "Q. Now doctor, at the same time and place this statement was made to you, at the home, what, if anything, did she say about Dr. Riffle?" "A. In answer to a question, which I asked her, if any one else had been implicated in the procedure, she told me that four or five weeks before that, she had gone to Dr. Riffle, but he hadn't done her any good."

The objection to this testimony was that it relates to a separate transaction from the one causing her death and is not part of the *res gestae.* We think this objection was well taken and the evidence was not competent.

As to that part of said evidence that she had been to Dr. Riffle's office four or five weeks before, appellant cannot complain, because he introduced evidence

11. to prove the same fact, by the witness Cecelia Wenz, who testified that she went to Dr. Riffle's

office with Sarah Karabell three or four times when he gave her medicine, the last time being about four or five weeks before her death. *Gaff* v. *Greer* (1882), 88 Ind. 122, 45 Am. Rep. 449; *Bloom* v. *State* (1900), 155 Ind. 292; *Wheeler* v. *Moore, Admr.* (1899), 22 Ind. App. 186.

The remaining part of said answer, namely, "but he hadn't done her any good," could not have harmed appellant. This evidence did not tend in any way 12. to implicate appellant, and if it tended to show that Dr. Riffle had not caused her present condition, that would not tend to raise any inference that appellant did. It is not conceivable that the verdict would have been different if this evidence had been excluded.

Appellant complains of the court's refusal to permit Cecelia Wenz, a witness for appellant, to answer certain questions put to her on her direct examination, all of which sought to elicit certain alleged conversations with Sarah Karabell, and with Dr. Riffle in Sarah Karabell's presence, relating to the purpose of the visits of the deceased to Dr. Riffle's office.

In response to proper questions, the appellant would have been entitled to prove any statements of Sarah Karabell which tended to contradict any material 13, 14. part of her dying declaration. It is doubtful if the evidence proposed would have contradicted such dying declaration on any material subject, but passing that, each question put by appellant to such witness was objectionable, because it was either leading, setting out the conversation and asking the witness if such a conversation occurred, or it assumed the existence of facts, to which the witness had not testified. The questions being objectionable in form, no error was committed in sustaining the objections thereto.

It is claimed by appellant that the court erred in

giving to the jury instruction No. 19, relating to hypothetical questions put to expert witnesses. In this instruction the jury were told that they were not to take for granted that the statements contained in the hypothetical questions were true, but were to determine from the evidence whether such facts had been proved; also, that a hypothetical question based upon material facts not proved was of little or no weight, but that any reasonable doubt on these matters was to be resolved in favor of the defendant. This instruction was copied from one approved by this court in the case of *Guetig* v. *State* (1879), 66 Ind. 94, 32 Am. Rep. 99. The same instruction was again approved in the case of *Goodwin* v. *State* (1884), 96 Ind. 550. See, also, the case of *Grand Lodge I. O. M. A.* v. *Wieting* (1897), 168 Ill. 408, 48 N. E. 59, 61 Am. St. 123, which cites both of the above decisions of this court and holds that such an instruction would have been proper, if requested. Also, *Forsyth* v. *Doolittle* (1886), 120 U. S. 73, 17 Sup. Ct. 665, 41 L. Ed. 1095. Because of the danger that a jury might take the hypothetical question and the answer thereto as some evidence of the truth of the facts stated in the question, it has been considered proper to give an instruction of the purport of the one under consideration, and it is held not to invade the province of the jury.

Hypothetical questions were put to witnesses for both the State and appellant, and no error was committed by giving the instruction questioned.

We have considered each question raised by appellant in his brief, and finding no reversible error, the judgment is affirmed.