WERLING, ADMINISTRATRIX, *v.* NEW YORK, CHICAGO
AND ST. LOUIS RAILROAD COMPANY.

[No. 13,309. Filed October 3, 1929.]

*Colerick, Jackson & Parrish,* for appellant.

*Howard L. Townsend, Albert E. Thomas* and *Harry H. Hilgemann,* for appellee.

NICHOLS, J.—Action by appellant against appellee for damages for the alleged negligent killing of appellant's decedent while he, as conductor of one of appellee's trains, was operating the same from Fort Wayne to Chicago.

The complaint, in one paragraph, under the federal Employers' Liability Act, alleged that the death of said decedent was due to the negligent construction and maintenance by appellee of a bridge or trestle work over the Little Calumet river at the station known as Van Loon in Lake county, Indiana. Appellee answered in general denial.

There was a trial by jury, and, at the conclusion of the evidence by appellant, appellee requested the court to give a peremptory instruction in favor of appellee, which motion was sustained, and the jury was directed to return, and did return, a verdict for appellee, on which

judgment was rendered that appellant recover nothing, from which judgment, after appellant's motion for a new trial was overruled, this appeal, appellant assigning that the court erred in overruling her motion for a new trial, presenting that the verdict of the jury is not sustained by sufficient evidence, that it is contrary to law, and that the court erred in sustaining appellee's motion to instruct the jury, and in instructing it, to return a verdict for appellee.

Appellant contends that she has made her case in regard to the three essential elements involved in this appeal, which are: That the bridge was negligently constructed and maintained; that such construction and maintenance were the proximate cause of decedent's drowning; and that the condition of the bridge on the night of his death, and the peculiar location of the caboose thereon, were not risks appreciated by the decedent at the time he stepped from the caboose, and consequently were not risks assumed by him at the time he engaged to work for appellee, or during any of the time he worked for appellee.

Appellee contends that the decedent assumed the risks, and that, wholly aside from the question of the assumption of risk, the proximate cause of decedent's getting into the river is wholly conjectural.

The pertinent facts, as disclosed in appellant's recital in her brief, are that appellee's track at the point in question is a single track over the Little Calumet river; the bridge over the river, the length of the ties and all of the pertinent things complained of were the same as they had always been; appellant's decedent had been a railroad man for more than 30 years, and, for more than 25 years, had been a freight conductor for appellee, running between Fort Wayne and Chicago over this bridge, and, for the past 20 years before his death, had crossed the bridge six times a week in the same

caboose he was in on the night that he met his death; on the night of May 23, 1924, the night of the accident, he had 59 freight cars and a caboose in his train; about 2,400 feet west of the bridge is a water tower; on the night of the accident and for three weeks before, there had been a slow order over the bridge, by which trains were required to reduce their speed, when approaching this bridge from either direction at a point about 2,000 or 3,000 feet from the bridge, and proceed over it at six miles an hour.

On the night in question, decedent's train stopped at South Gary, which is about three miles east of the bridge, then proceeded west and slowed to about six miles an hour about 2,000 feet east of the bridge, and proceeded over it and up to the water tower at that speed; when the engine stopped at the water tower, the caboose was on the bridge; at that time, the decedent was seated at a table on the south side of the caboose at the front end, working on a wheel report; his rear flagman was in the cupola of the caboose; in the rear end of the caboose were two persons, a telegraph operator for the Indiana Harbor Belt, and a patrolman for appellee; these two men were sitting there talking, and the flagman in the cupola knew the caboose was over the river; when the train had stopped, the decedent arose from his table and walked back to a cooler, which was near the rear end of the caboose; the flagman, who was in the cupola, saw him walk back, get a drink, and then walk toward the front end of the caboose; all of the witnesses heard the door at the front of the caboose slam; no one of them knew whether he took a lantern with him; no one saw him go out at the door of the caboose; they were only conscious of his movements as above indicated and heard the door slam; no one knows whether he took a lantern, except by inference; the flagman said that they had seven lanterns, and that, after the accident, he took the train into

Chicago, and when he arrived there, he had only six.

There is no evidence to show any purpose decedent had in going out of the caboose, and his purpose in so doing is not known; it is not known whether he took a lantern with him; it is not known or shown from which side of the train he fell or, perchance, jumped; it is left purely in the realm of conjecture as to whether he stumbled and fell from the platform, or whether he tried to alight and get off the bridge, and in so doing, missed his footing or his handhold; there is no evidence to show that he did not know where he was; he had been over this bridge probably 6,000 or 7,000 times, in the daytime and in the nighttime, and had been over the bridge 18 or 20 times since there was a slow order over it, for the reason that it was being worked upon and new concrete abutments and pillars were being put in.

All of the witnesses testified that, so far as the width of the ties or the surroundings of the bridge and the track and the caboose were concerned, they were the same as they had been for 20 years, during which time the decedent had been going over this bridge in this caboose; the bridge is out in the open country; the conditions and surroundings of the bridge were well known to the flagman who was in the cupola of the caboose, and he knew that the caboose was over the river, notwithstanding the fact that he was seven feet farther from the water than the decedent was at the time he walked out at the front door of the caboose; these conditions were also well known to the two witnesses who were sitting in the rear of the caboose, who were over the bridge infrequently. When the cry for help came, the witness who was sitting in the rear end of the caboose testified that he thought that the decedent was being held up, because, about two weeks prior to that, there had been a man held up there at the water plug, in the caboose; this witness said that that was the first thing that came

to his mind and the mind of the patrolman who was sitting there with him; for aught that appears from the evidence, there may have been a "hobo" on the front end of the caboose, who had gotten on at South Gary, three miles east of the bridge, who pushed the decedent in the river when he came out at the front door, or he may have stumbled and fallen into the water, or he may have jumped with suicidal intent. We do not know, we cannot tell. We can only conjecture and speculate as to the how.

Where the evidence leaves to guesswork and speculation the proximate cause of the injury, a verdict should be directed. *Howe* v. *Michigan Central R. Co.* (1926), 236 Mich. 577, 211 N. W. 111; *Chicago, etc., R. Co.* v. *Coogan, Admx.* (1926), 271 U. S. 472, 46 Sup. Ct. 564, 70 L. Ed. 1041; *Smith* v. *Philadelphia, etc., R. Co.* (1925), 3 Fed. (2d) 604; *Reading Co.* v. *Boyer* (1925); 6 Fed. (2d) 185; *Murray* v. *Pittsburgh, etc., R. Co.* (1918), 263 Pa. 398, 403, 107 Atl. 21; *Pittsburgh, etc., R. Co.* v. *Vance* (1915), 58 Ind. App. 1, 108 N. E. 158.

The court did not err in directing a verdict.
Affirmed.