## Southern Railway Company v. Wilkins, Administratrix.

[No. 14, 129.   Filed November 19, 1931.   Rehearing denied March 18, 1932.   Transfer denied May 13, 1932.   Writ of certiorari to U. S. Supreme Court denied October 24, 1932.]

*John D. Welman, Morton C. Embree* and *Charles O. Baltzell,* for appellant.

*Sanford Trippet, Espenscheid & Espenscheid, T. Morton McDonald* and *Douglas H. McDonald,* for appellee.

LOCKYEAR, J.—This was an action brought by the appellee against the appellant wherein the appellee sought to recover a judgment for damages for the death of James R. Wilkins, an employee of the appellant, whose death is alleged to have resulted from injuries received while working as a car inspector for the appellant in the Southern Railway Company's yards in Princeton, Indiana.

The action is under the Federal Employers' Liability Act of April 22, 1908, and subsequent acts amendatory thereof. (45 USCA, §§51-59.)

The complaint, in substance, alleges that on September 23, 1927, said appellant had made up in its yard at the city of Princeton, Indiana, a train of empty coal cars on one of the tracks in its said yard used for that purpose, which said train of coal cars was being moved by said appellant from points in the State of Illinois and other states to mines located on the line of said appellant's railroad within the State of Indiana for the purpose of being used for transporting coal by said appellant from points in the State of Indiana to points in the State of Illinois and other states. That, in so making up said train, a caboose was first placed on said track and said empty coal cars were coupled onto said caboose at the east end thereof; that, at the same time, said appellant was making up a train going west to some place in the State of Illinois, the exact destination of which said train is to the appellee unknown, and which said train was being made up on the same track with said eastbound train; that, in making up said westbound train, the caboose thereof was coupled to the west end of the caboose of said eastbound train, and, in the process of making the same up, cars were coupled to said caboose at its west end.

That, on said day, appellee's decedent, James R. Wilkins, was in the employ of said appellant as a car inspector and that, in the course of his employment, he was ordered and directed by said appellant to inspect all cars in all trains moving in and out of appellant's yard at the city of Princeton while he was on duty and to make what was designated as a "yard test" of all air brakes on all cars and cabooses moving in and out of said appellant's said yard; that, under the method of operation adopted by said appellant and its said employees at said point at said time and place, all the cars and cabooses in both trains being made up on said track at the same time were connected with what was known

as "the yard test plant for air-brake apparatus"; that, after the brakes on trains that were made up had been tested by said yard test plant, another test known as "the engine test" of said air brakes was made by connecting the air brake line on said engine with the train line and cutting out said yard test plant.

That said yard test plant was so cut out by turning a valve or angle cock at the rear of the caboose of said train; that said engine test was so made after said engine was coupled into said train and said air line connected and notice thereof given by the engineer of said train by sounding a blast on the steam whistle attached to said locomotive; that, upon the sounding of said signal by said locomotive engineer, it then became the duty of said inspector to go between the cabooses and turn the angle cock at the rear of said caboose so as to cut out said yard test plant.

That, at the time of the happening of the injuries herein complained of, said eastbound train had been made up and the engine coupled onto the same and the train line connected up with the air-brake apparatus on said engine; that thereupon said appellant ordered and directed the said James Wilkins, by means of a signal given by the steam whistle attached to said engine, to go between said two cabooses and turn said valve or angle cock at the rear of the caboose of said eastbound train and cut out the yard air-brake test plant as aforesaid.

That, pursuant to said order, direction and signal, the said James R. Wilkins went in between said two cabooses and turned said angle cock and cut out said yard-test plant; that each and all of the foregoing facts were to said appellant and to all its servants and employees working in said yard at said time well known; that, while the said Wilkins was in between said cabooses and engaged in the performance of his duty and dis-

charging said order and direction as aforesaid, said appellant carelessly and negligently made a flying switch of a cut of cars from the west and carelessly and negligently kicked said cars in upon said track and against the cars coupled to the west of said cabooses with great and unnecessary force and violence without any warning or notice whatsoever to the said Wilkins and without anyone being upon said cars to control and manage them, and thereby caught and crushed, bruised, mashed and injured the said Wilkins through the body and abdomen and thereby inflicted painful and serious injuries upon the body and person of said Wilkins.

That the said Wilkins died as a result of said injuries on September 30, 1927, leaving surviving as his heirs and only heirs at law his widow, Lucy Wilkins, and two infant children, to-wit, a daughter, Madge Wilkins, aged 16 years, and a son, James Wilkins, aged 7 years, all of whom were dependent upon him for support.

Wherefore, the appellee prayed judgment against the appellant in the sum of $60,000 and for all other just and proper relief in the premises.

The appellant filed a demurrer to the complaint on the grounds that said complaint does not state facts sufficient to constitute a cause of action, which was overruled, whereupon the appellant filed an answer in general denial to the complaint.

There was a trial before a jury; the jury returned a verdict in favor of appellee and against appellant for $10,000, for which amount judgment was rendered. The appellant filed a motion for a new trial on the grounds that the verdict of the jury is not sustained by sufficient evidence and is contrary to law, also the court erred in admitting certain testimony of witnesses in evidence and refusing to admit the testimony of certain other witnesses, and the court erred in giving certain

instructions and refusing to give other instructions, and that the damages assessed were excessive.

The errors assigned, necessary for a proper consideration of this case, are that the court erred in overruling the demurrer of the appellant to the appellee's complaint; and the court erred in overruling the motion of the appellant for a new trial.

We hold that the complaint states a cause of action under the Federal Employers' Liability Act, as may be seen by the facts of the complaint set out above in this opinion.

The appellant contends that there is no proof that James R. Wilkins was injured by any acts resulting from any negligence of appellant or that he died from such injuries. There is evidence to the effect that, at the time the signal by locomotive whistle was given decedent to cut out the yard-test plant, the plant had not been cut out. The decedent, at that time, was in the caboose of the train and immediately picked up his lighted lantern, went out the west end of the caboose and got off on the south side, which was the side from which he had to go between the cabooses to cut out the yard-test plant. Within 30 seconds there was a violent lick of cars being kicked in on the caboose from the west end, knocking the caboose some five feet or more. In a very few seconds decedent returned to the caboose with his lantern out, pale, trembling, very much excited, stooping over, holding his hands across his abdomen, and stated that he came near getting killed and felt sick. After the collision the angle cock on the rear of the caboose was seen to have been turned.

The angle cock, a valve with an iron lever about six inches long, is at the end of the train line, alongside the coupler of the caboose, has to be turned by the inspector in cutting out the yard-test plant and would strike a

man of the height of decedent standing on the ground somewhere around the abdomen.

The coal train left Princeton at 6:10 a. m. Decedent was at home at 7:00 a. m. complaining of pain, vomited, and about 20 minutes later exhibited to his wife an angry red mark extending across his abdomen. From this time on decedent kept getting worse, suffering pain in abdomen until he died 7 days later.

Decedent had been operated on for appendicitis about 7 years before his death and had had no trouble from his appendix from that time until his last illness. It would seem that the appendix was not entirely removed at the first operation, for, when the body was exhumed two years after burial and an autopsy held, medical witnesses testified that the immediate cause of death was appendicitis and accompanying peritonitis; the appendix was found to be in an abnormal condition due to a previously inflamed condition with three hard stone-like masses or fecoliths in it; that a blow or squeeze on the abdomen where the appendix is abnormal due to former inflammation, or when the appendix contains fecoliths, will cause the appendix to become inflamed or what is known as "traumatic appendicitis"; that, in such a case, peritonitis would result in from three to six days.

One witness, an expert pathologist, head of that department in the Indiana University School of Medicine, testified that if decedent received a blow or squeeze across the abdomen 7 days before he died that was the most probable cause of the appendicitis.

The appellant contends that it was not proper to allow a witness to testify to a statement alleged to have been made by the decedent immediately after the accident concerning the injury. The record discloses that the attorney for the appellant asked the same witness to detail the same conversation about which he now complains. No error is available under

such circumstances. *Wheeler* v. *Moore, Admr.* (1899), 22 Ind. App. 186, 53 N. E. 426; *Gaff* v. *Greer* (1882), 88 Ind. 122, 45 Am. Rep. 449; *Hill* v. *State* (1923), 194 Ind. 688, 142 N. E. 639; *Bloom* v. *State* (1900), 155 Ind. 292, 58 N. E. 81.

Moreover, the statements made were so close to the accident as to time and place that the statements were properly considered and admitted as a part of ■ the *res gestae*. *Insurance Company* v. *Mosley* (1869), 75 U. S. 397, 19 L. Ed. 437; *Ohio, etc., R. Co.* v. *Stein* (1892), 133 Ind. 243, 31 N. E. 180, 32 N. E. 831; *Kauffman* v. *Bardo* (1925), 83 Ind. App. 482, 148 N. E. 496; *Ft. Wayne, etc., Traction Co.* v. *Roudebush* (1909), 173 Ind. 57, 88 N. E. 676, 89 N. E. 369.

There appears to have been introduced in evidence a rule of the operating department of the Southern Railway System in the following words: "A blue signal, displayed at one or both ends of an engine, car or train, indicates that workmen are under or about it; when thus protected it must not be coupled to or moved. Workmen will place the blue signals and the same workmen are alone authorized to remove them. Other cars must not be placed upon the same track so as to intercept the view of the blue signals without first notifying the workmen."

This rule appears to be intended to prohibit the running of cars upon a track where a blue flag is placed, but it does not exempt the railroad company from ■■ exercising due care where there is no blue flag, and it is a question for the jury to determine that fact, and the evidence adduced above is sufficient to show negligence even though the deceased did not put out a blue flag. In the case of *Louisville, etc., R. Co.* v. *Payne's Admr.* (1917), 177 Ky. 462, 197 S. W. 928, L. R. A. 1918C 376, 379, in a case similar to this, the Supreme Court of Kentucky thus stated the rule: "The

[railroad] company is under the humane duty to antici-
pate the presence of such employees under or between
the cars and to take such precautions for their safety
as a proper lookout and timely warning of approach-
ing cars will afford; and this duty is owing whether the
injured employee protects himself by means of a blue flag
or not, and particularly so where . . . the rule requir-
ing such action on his part was habitually disregarded
with the acquiescence of those employees of the company
superior in authority to the injured employee."

The appellant in this case insists that there is no
proof as to how the deceased met his death, and that
it is more possible and more probable under the
evidence in this case that the decedent died of
natural causes than that he died as a result of
injuries, if any, which he received, and cite in support
thereof the following cases: *Pennsylvania R. Co.* v.
*Johnson, Admx.* (1929), 91 Ind. App. 412, 169 N. E.
358; *Werling, Admx.,* v. *New York, etc., R. Co.* (1929),
90 Ind. App. 26, 168 N. E. 42; *Atchison, etc., R. Co.*
v. *Toops* (1930), 281 U. S. 351, 50 Sup. Ct. 281, 74 L.
Ed. 896. We do not agree with the appellant in this
statement, but are of the opinion that the doctrine of
*res ipsa loquitur* is applicable and that there is evidence,
both circumstantial and positive, that the decedent was
injured in the manner set out in the appellee's com-
plaint.

The appellant excepted to the giving of each instruc-
tion tendered by the appellee and given by the court.
We have examined all the instructions given by
the court and find no reversible error in the in-
structions given; in fact, the 15 instructions
given at the request of the appellant are as favorable,
and, in some instances, more favorable to appellant's
theory of the case than the evidence justifies; and the
instructions given on behalf of appellee state the law

fairly as applied to the pleadings and evidence in the case.

The appellant insists that the damages assessed by the jury are excessive. While the verdict in this case was for a substantial sum, there is nothing in the record that we have been able to find that would indicate anything but a fair trial of this case upon its merits and that a correct result was reached, and there is no showing that the jury was influenced by anything other than the evidence in the case.

No reversible error appearing in the record, the judgment is affirmed.