RED CAB, INC. *v.* ZIEGNER

[No. 16,663. Filed October 14, 1940. Rehearing denied November 2, 1940. Transfer denied January 23, 1941.]

*Cooper, Royse, Gambill & Crawford,* of Terre Haute, for appellant.

*James V. Donadio* and *R. Stanley Lawton,* both of Indianapolis, for appellee.

CURTIS, J.—This is an appeal from an award of the full Industrial Board of Indiana granting compensation to the appellee for the death of her husband Roscoe (Ross) Ziegner, on the grounds that the death of the decedent arose out of and in the course of his employ-

ment with the appellant Red Cab, Inc., and that the appellee was a dependent of said husband within the meaning of that term as used in the Workmen's Compensation Act of Indiana.

On December 6, 1939, the appellee filed her Form 10 application for adjustment of a claim for compensation, with the Industrial Board of Indiana alleging therein that she was the wife of Roscoe (Ross) Ziegner who died July 22, 1939, as the result of injuries sustained on July 1, 1939, in an accident which arose out of and in the course of his employment with the appellant; that the injuries from which the death resulted were caused by a fall into an open, unguarded grease pit in the appellant's garage, fracturing the third to tenth ribs on the decedent's left side and also making a puncture wound on the left chest wall; and that the appellee is the only surviving dependent of said Roscoe (Ross) Ziegner and that she was dependent upon him for support at the time of his death and that his average weekly wage was $30.00.

The appellant filed no answer to said application but it was submitted under the rule of the Industrial Board, which provides that if no answer be filed the allegations of the petition will be deemed to be denied.

The hearing member awarded compensation. Upon an application for review before the full board it also made a finding to the effect that on July 1, 1939, while in the employ of the appellant at an average weekly wage of $10.01 Roscoe Ziegner suffered an injury as the result of an accident arising out of and in the course of his employment of which the defendant had knowledge, that by reason of said accidental injury said Roscoe Ziegner died July 22, 1939, and at the time of his death said Roscoe Ziegner left as his sole and only

dependent his wife Edna L. Ziegner with whom he was not living at the time of his death but on whom the law of the state imposed support; and that the appellant pay compensation to the appellee at the rate of $8.80 per week commencing July 22, 1939, and during the period of her dependency, but not exceeding 300 weeks; that the appellant pay the reasonable and necessary medical, surgical, hospital and nurses services for the first 90 days following said injury and pay the statutory $150.00 burial expense and also pay the attorney fees of appellee's attorney in accordance with the schedule of attorney fees established by the Industrial Board, together with costs. The award was in accordance with the finding.

From said award this appeal has been prosecuted, the error assigned and relied upon being that the award of the full Industrial Board is contrary to law.

It has been stipulated between the parties that "on the 1st day of July 1939 plaintiff's decedent Roscoe (Ross) Ziegner was in the employ of defendant Red Cab, Inc.", and that "prior to the filing of the complaint in this cause a good faith effort was made to adjust the matter and the parties disagreed."

Under the assignment of error the appellant makes two main contentions; first, that there is no competent evidence to sustain the finding that the appellee's decedent died as the result of an accident arising out of and in the course of his employment by the appellant and, secondly, that the evidence fails to establish the right of the appellee, who was living apart from her husband to have compensation awarded to her, for the assigned reason that it fails to show that she was justifiably living apart from him and that the law cast upon him the duty to support her.

The assignment of error and the contentions made require an examination of the evidence. The evidence most favorable to the award tends strongly to show that the appellant is a taxicab company in Indianapolis. The decedent, the husband of the appellee, was one of its drivers and had been such for several years and still was one on the first of July, 1939. On that date, the decedent went to work for the appellant at about three o'clock in the afternoon and was supposed to work until about two o'clock in the morning. The appellant maintained substations at various points over the city from which its drivers called in to receive further orders. One of these substations was located at a former garage at 30th street and Highland Place, Indianapolis. The appellant had "inherited" a lease to this building from the Hoosier Cab Company. This building was approximately one hundred twenty feet long, seventy-five feet wide, and had a toilet in the southwest corner. There was also an open grease pit about thirty-five feet from the toilet on the east side of the building and about seventy-five feet from the front of the building. The building was unlighted, but there were French doors on the east wall near the grease pit. The only place in the building in which water was used was the toilet already mentioned as being in the southwest corner of the building. The appellant company contracted with the Water Company and issued checks to it for water service for this building. In the appellant's said building there was a typewritten sign saying, "Please Use Toilet in Rear of Building." There were front and back entrances to this building, and when these were open, it was possible for a cab to drive completely through the building. There was a private telephone on the front and outside of this building which the cab drivers used. This phone was a private

phone and was connected directly with the appellant company's offices without going through any central system. Cab drivers at one time parked outside of this building to use the phone, but, following complaints about the noise, the appellant company opened the front and back doors of the building just described, so that the drivers could drive completely through the building, going from the south to the north, and, on arriving near the north of the building, could wait for orders or calls from the appellant's dispatcher. On the night in question, sometime in the early evening the decedent called the appellant's offices from the phone on the outside of the building and "checked in" with his name and driver's number. About ten minutes later, he again called in. It was possible for the telephone operator to know the station from which he called without his saying which station it was. On his second call, he reported that he had fallen into the grease pit, and, after the operator asked him how badly he was hurt, she immediately notified the night superintendent of the appellant and was then ordered to get in touch with the night supervisor of the appellant and send him to investigate the accident. The dispatcher then called a cab driver at a substation near the one above described and ordered a cab driver to take the decedent to the hospital. At the hospital, the night supervisor for the appellant who had been sent by the night superintendent to investigate the accident, asked the decedent what had happened, and the latter told him that he had fallen into the grease pit at the said building. He said that he had done this as he was intending to go back to the toilet.

Upon arrival at the hospital, the decedent was examined by a doctor who found a small laceration on the left side of the front chest wall and found that the

decedent had sustained a crushing injury to the chest involving fractures of the second to the tenth ribs, with double fractures of the eighth and ninth ribs. There was some free air between the skin in the left armpit region. The small wound appeared to come from a nail file which the patient had in his pocket at the time he fell in the pit. The patient reported to the doctor that he had sustained the crushing injuries above set out when he had fallen into the grease pit in the said building, when he had gone to the back of the building to void.

The appellant had an agent whose duty it was to serve as claim agent, insurance agent, and safety director and to make out reports of injuries to employees of the defendant company. This agent made out such a report in longhand concerning the accident above described and sent it to the Bituminous Casualty Corporation in Terre Haute, but did not send it to the Industrial Board. The information on which this report was based was that obtained from the appellant's night superintendent and from the decedent. The said report was made while said agent was performing his duties of obtaining information for making out the report on the afternoon of the day following the accident.

The decedent remained at the hospital until about the 12th of July, when he was permitted to go home but was not permitted to go to work. On the 15th of the same month, the patient was re-admitted to the hospital, after being sent from his home in a private ambulance. Examination by a doctor at that time disclosed pneumothorax, meaning that the lung had been partially collapsed on the left side. On the 22nd of July, the patient died from a sudden massive collapse of the left lung, due to the previously sustained injury to that lung. The death of decedent, in

the opinion of the doctors, was caused by or connected with the injury which the patient received on the first of July, 1939, by reason of his fall into the pit in the appellant's building. It is contended by the appellant that all of the above evidence is hearsay and therefore not competent. While said evidence may be said to be in the general field of hearsay evidence, yet in Workmen's Compensation cases the strict hearsay rule has been relaxed and modified in a situation such as the instant case presents where the employer has all sources of information at his command when a report of the accident is made and has ample opportunity to investigate and be satisfied as to the facts. This was the situation here as disclosed by the evidence. An investigation was immediately made by the employer after the accident was reported to 'it which report was within a few minutes after the accident. Certainly the evidence of the telephone operator of the appellant who received the report from the deceased and whose duty it was to receive such reports from the cab drivers and to issue orders to them was admissible as to the duties she performed with respect to this accident after it was reported to her. She testified that she sent another of the appellant's cabs to take the decedent to the hospital and notified the cab company's officials of the accident. As explaining this evidence and in connection with it and her report to her employer she was allowed to testify to the fact that the decedent at that time (about ten minutes after the accident) told her that he had fallen into the grease pit in the building and had been hurt. We think that that evidence was properly admitted. See: *Columbian Enameling and Stamping Co.* v. *Cramer* (1926), 86 Ind. App. 164, 156 N. E. 467.

When the above evidence given by the telephone operator and dispatcher of the appellant is considered to-

gether with the physical facts testified to concerning the injury and death of the decedent we have no hesitancy in holding that the finding of the board that the decedent met his death by reason of an accident arising out of and in the course of his employment by the appellant, is sustained by competent evidence. See the following cases: *Insurance Company* v. *Mosley*, 75 U. S. 397, 19 L. Ed. 437; *Southern R. Co.* v. *Wilkins, Admx.* (1932), 95 Ind. App. 130, 178 N. E. 454; *Kauffman* v. *Bardo* (1925), 83 Ind. App. 482, 148 N. E. 496; *Southern Extract Co.* v. *Green* (1939), 103 F. (2d) 232. We do not deem it necessary to give consideration to the other admitted items of evidence claimed to be hearsay.

The appellant next argues that there is not sufficient evidence to sustain the finding of the board that the appellee is a dependent. She was living apart from the decedent at the time of his death under the following circumstances: They were married in 1902; for the four years preceding the separation, he had been unemployed most of the time, although he had attempted to get work. He and his wife and his minor daughter had all been supported by his father-in-law. After four years, however, the funds of the father-in-law were becoming exhausted. During these four years, the decedent had not supported either his wife or his minor daughter. However, shortly before the actual separation, the decedent did obtain employment with the G. L. Ramey Company as an insurance agent. Even though employed, he still refused to contribute to the support of his wife and minor daughter. His wife asked him what he intended to do towards supporting them, and he replied, "Nothing." The fact that the daughter of the decedent and the appellee was still in school and that the other children were not

in a position to help financially made it imperative that the appellee do something to remedy their financial situation, and, as her request for support proved unavailing, she suggested to the decedent that renting a room might be one possibility. The decedent moved out and left the appellee in their last marital domicile, where she is still living with the children of these parties. The appellee never again saw the decedent alive. He did not correspond or attempt to get in touch with her in any way. At no time before or after the separation did the decedent ever accuse the appellee of any conduct which would justify separation, and the appellee did not at any time engage in any conduct which would have justified a separation. During the time that she and the decedent were living together, she continued to mend the decedent's clothes, keep his room in order, and get his meals. The appellee did not at any time become divorced from the decedent. There is evidence that after the decedent abandoned his wife, the appellee, and their children, that he never at any time offered to return or made any attempt to establish a home for them or offered them any support whatever.

The board was fully warranted in its conclusion that the appellee was justifiably living apart from the decedent.

The award is not contrary to law and is affirmed with the usual 5 per cent statutory penalty.

NOTE.—Reported in 29 N. E. (2d) 330.